A01A1987. IN RE ESTATE OF GARMON.
(561 SE2d 216)

RUFFIN, Judge.

Sara Reese Daniel filed a petition against J. C. Garmon, Jr. ("Garmon"), the executor of J. C. Garmon, Sr.'s will, to force an accounting of the estate's assets. Daniel, a legatee under the will, alleged that Garmon failed to conduct an accounting of the estate, breached his fiduciary duties to the legatees, and engaged in self-dealing. Daniel requested, among other relief, that the court award her attorney fees under OCGA § 13-6-11. After the trial court entered a consent order resolving all but the dispute over attorney fees, it granted Daniel's motion for the estate to reimburse the attorney fees she incurred. The court further ordered that Garmon not be reimbursed for the attorney fees he incurred in defending the action.[1] Garmon appeals these rulings, and for reasons that follow, we affirm.

The record shows that the consent order provided for future resolution of the attorney fees issues, which specifically included both Daniel's claim for fees under OCGA § 13-6-11 and her previously filed motion to enjoin the estate from reimbursing Garmon for his attorney fees. In addressing these two attorney fees issues, the order provided: "If the parties fail to enter into a Consent Order fully settling The Attorneys Fees Claims, the Court will enter an Order setting a date for hearing on the issues raised in The Attorneys Fees Claims, at which time the parties will present evidence and arguments to the Court on said issue."

Daniel subsequently filed a motion in which she sought reimbursement of her attorney fees and denial of Garmon's reimbursement of attorney fees from the estate. Daniel argued that she was entitled to an award of fees against Garmon under OCGA § 13-6-11 and, alternatively, reimbursement of her fees from the estate under former OCGA § 53-7-104. In support of her motion, Daniel attached numerous exhibits, including portions of Garmon's deposition, her attorney's itemized fee invoices, and the affidavit of her attorney attesting to the reasonableness of those fees. Garmon filed a response to Daniel's motion, but did not request an evidentiary hearing on the matter. In his response, Garmon stated: "Rather than set forth a

---

[1] Though not subject to this appeal, the court also ordered Garmon to reimburse the estate for any attorney fees it previously paid on his behalf.

lengthy recitation of facts, Respondent will simply present only such rebuttal and explanatory evidence as is necessary to reflect upon the issue of attorney's fees." This evidence consisted of Garmon's affidavit, some exhibits to that affidavit, and the affidavit of his attorney challenging the reasonableness of the fees charged by Daniel's counsel.

The trial court granted Daniel's motion, but its order did not include findings of fact and conclusions of law or state the legal basis for its award. Rather, the court merely stated:

> That Petitioner's Motion for Reimbursement of Attorney's Fees is hereby granted and that she be awarded attorney's fees from the Estate in the amount of $26,979.55; and Petitioner's Motion to Deny Respondent Reimbursement of Attorney's Fees Incurred in Defense of this Litigation is hereby granted.

1. Garmon challenges this order on several grounds. First, Garmon asserts that the trial court erred in awarding attorney fees to Daniel because there was insufficient evidence to support the award under both OCGA § 13-6-11 and former OCGA § 53-7-104.[2] It is clear, however, that the trial court did not award the fees under OCGA § 13-6-11. Daniel's sole claim for fees under that Code section was against Garmon individually. Inasmuch as the court ordered that her fees be reimbursed by the estate, it could not have been granting her claim for fees under OCGA § 13-6-11.

In addressing Daniel's claim for reimbursement of fees under former OCGA § 53-7-104, we note that Garmon does not argue that the former version of this statute is inapplicable, and we therefore do not address that issue.[3] The Code section provided that "[i]f the administrator or executor, for any cause, shall decline to litigate any claim, he may assign the claim to a distributee or creditor, who may at his own expense prosecute the same. After *the payment of expenses*, any proceeds recovered shall be distributed by the administrator or executor."[4] This Code section allows "an heir who sued out a

---

[2] Although the consent order provided that these issues would be decided following an evidentiary hearing and the court never conducted such a hearing, Garmon does not claim this as error.

[3] The editor's notes preceding former Chapter 7 of Title 53 state that OCGA § 53-7-104 was effective until January 1, 1998, at which time a totally revised Chapter 7 became effective. Similarly, OCGA § 53-1-1 (b) of the revised Code states that "[e]xcept as otherwise provided by law, the provisions contained in this chapter and Chapters 2 through 11 of this title shall be effective on January 1, 1998; provided, however, that no vested rights of title, year's support, succession, or inheritance shall be impaired." As stated above, because Garmon has not raised the issue, we do not address whether former OCGA § 53-7-104 is effective here.

[4] (Emphasis supplied.) Former OCGA § 53-7-104.

claim of the estate on assignment of the same to him by the administrator . . . to recover his expenses out of the fund brought in."[5] But it also has a broader purpose. In *Estes v. Collum*, we observed that,

> without specific statutory authority an heir may sue, although the administrator does not assign the claim, or consent to the suit, if the action of the administrator is fraudulent, collusive, and unjustifiable. Why may not such heir — who has done the exact thing provided for in Code § [53-7-104], except that he has been unable to obtain the consent or assignment of the administrator, (which, under Supreme Court decisions, does not preclude his action) — not also realize expenses out of the fund brought in, the ordinary having awarded the same in the exercise of his general jurisdiction over the disposition and distribution of the property of the estate? To hold otherwise would be to destroy the tenor and purpose of the Code section as it has been construed by the Supreme Court.[6]

We likewise reasoned that it is only "equitable that, where one person goes to expense to bring in a fund for a common benefit, it is only fair and right that those who benefit thereby should pay their pro rata part of the expenses of obtaining the fund for distribution."[7] Thus, in *Estes*, we affirmed an award of attorney fees from estate assets to an heir who sued the administrator to bring wrongfully taken property back into the estate.[8]

Evidence in this case reflects similar circumstances. The record shows that, as executor, Garmon failed to properly account for certain assets and that he treated other assets of the estate as his own. For example, although Garmon owed a substantial debt to the testator, which he collateralized with a security deed to certain property, he failed to schedule that debt as part of the estate's assets. In addition, Garmon obtained a $100,000 personal loan, secured it with estate property, and admitted in his deposition that he was several months behind in payments on the loan. On another occasion, Garmon secured a $5,090 personal loan with estate property. Garmon also mortgaged property he owned jointly with the estate to obtain a $25,000 personal loan. Apparently, Garmon believed that as long as his personal loans were not in default, the estate should not have been concerned about them.

---

[5] *Estes v. Collum*, 91 Ga. App. 186, 192 (1) (a) (85 SE2d 561) (1954).
[6] Id.
[7] Id. at 191 (1) (a).
[8] See id. at 191-192.

In the consent order entered by the trial court, the parties agreed that an accountant would audit the estate's financial records and that Garmon would be required to "reimburse the Estate any funds that were misappropriated from the Estate to his personal account or for any other personal use." The consent order also required Garmon to separate his personal finances from the estate's and obtain a "release from creditors of any claim or lien such creditors may have on estate property." Finally, the consent order required Garmon to pay Daniel a significant sum to compensate for the debt he owed to the estate, but apparently failed to list among the estate's assets.

Under these circumstances, it is clear that Garmon mismanaged estate assets and that the trial court's consent order, filed only as a consequence of Daniel's lawsuit, remedied the mismanagement. Although we do not know whether Garmon will be required to refund other money to the estate for misappropriated funds, he has been required to reimburse Daniel a significant sum due to his failure to disclose a large personal debt he owed to the estate. Furthermore, Garmon's collateralization of his personal debts with estate assets seriously jeopardized the estate's ownership of those assets. It is undisputed that Daniel's suit resulted in a consent order requiring that those assets be removed from the reach of Garmon's personal creditors and put securely back into the estate where they belonged. Although the collateralized assets had not yet been seized by Garmon's creditors, Daniel's actions in safeguarding them from such seizure were undoubtedly necessary and provided sufficient grounds to authorize the trial court to order the estate to reimburse her fees.[9]

2. Our opinion in *Estes* also demonstrates why the trial court was authorized to prohibit the estate from reimbursing Garmon, as executor, for the expenses he incurred in defending the action. OCGA § 53-7-6 (4) permits an executor "[t]o provide competent legal counsel for the estate according to the needs of the estate" and recover those legal expenses from the estate. As stated in *Estes*, however, " 'the purpose of supplying executors with legal advice is for the protection of the estate he represents. The object is not to extricate him from difficulties due to his fault or misconduct.' "[10] More recently, we held that an executor "may not bind the estate for attorney fees for the costs of litigation brought on by his own fault or misconduct."[11] Because the evidence showed that Garmon's mismanagement of estate assets necessitated Daniel's suit, he was not entitled to reim-

---

[9] See id. at 192.

[10] Id. at 192 (1) (a).

[11] *Nesmith v. Pierce*, 226 Ga. App. 851, 853 (3) (487 SE2d 687) (1997).

bursement of his expenses from the estate, and the trial court did not err in prohibiting such a refund.[12]

3. Garmon next asserts that the case should be remanded because the trial court failed to issue findings of fact and conclusions of law. We disagree. Garmon has not shown that he ever requested findings of fact and conclusions of law or that he raised this issue before the trial court. Accordingly, that issue is waived.[13]

4. Finally, Garmon asserts that the amount the trial court awarded Daniel for attorney fees is unsupported by the evidence. Garmon argues that "to determine whether there was error in this regard would require findings of fact and conclusions of law by the trial court, as required by OCGA § 9-11-52." But OCGA § 9-11-52 (c) provides that "[w]hen findings or conclusions are not made prior to judgment to the extent necessary for review, failure of the losing party to move therefor after judgment shall constitute a waiver of any ground of appeal which requires consideration thereof." Garmon has not pointed to any evidence that he moved for findings of fact or conclusions of law after judgment. Thus, Garmon has also waived this ground for appeal.

*Judgment affirmed. Johnson, P. J., and Ellington, J., concur.*

DECIDED MARCH 1, 2002.

*Talley & Darden, Jeffrey B. Talley*, for appellant.
*Adam R. Gaslowitz & Associates, Adam R. Gaslowitz, Walter Hamberg III*, for appellee.

---

[12] See id.; see also *Ray v. Beneventi*, 229 Ga. 209, 213 (3) (190 SE2d 514) (1972) ("If it should be determined that the conduct of the executrix in mismanaging or defrauding the estate brought about the litigation, she will not be entitled to compensation from the estate for attorney's fees to defend herself against these wrongful acts.").

[13] See *Cage v. Chase Home Mtg. Corp.*, 212 Ga. App. 861 (1) (443 SE2d 504) (1994).