A05A0049. IN RE ESTATE OF ARNSDORFF.
(615 SE2d 758)

RUFFIN, Chief Judge.

St. Paul's Evangelical Lutheran Church ("St. Paul's") filed a Petition to Remove Executor, seeking to remove Fred S. Clark ("Clark") as executor of the estate of John Daniel Arnsdorff, Jr. (the "Estate") and to deny him compensation. After a hearing, the probate court granted St. Paul's petition and ordered Clark to forfeit over $79,000 in commissions and fees he had received and costs he had incurred as executor and attorney for the Estate. Clark appeals, arguing that the trial court erred in removing him and that it lacked authority to order repayment. For the following reasons, we affirm.

Clark was appointed executor of the Estate on September 27, 1999. Over a year later, St. Paul's, which is a beneficiary under Arnsdorff's will, petitioned the probate court to order Clark to provide

an accounting of the Estate's assets. The trial court held a hearing on the petition and issued an order requiring Clark to:

> file in this Court a Final Accounting of all receipts and disbursements of said estate, together with supporting vouchers [or] receipts and disbursements, within 30 days of the date of this order. Said accounting shall be in a format compatible with the official form used by this Court for accountings.

In response, Clark filed a stack of documents which he characterized as an "accounting."[1] St. Paul's then filed a petition to remove Clark as executor. Both parties presented evidence and testimony at a hearing on the petition. Subsequently, the trial court issued findings of fact and conclusions of law in an order dated June 26, 2003, from which Clark appeals.

1. Initially, we address Clark's contention that the trial court erred in dismissing him as executor of the Estate. In reviewing a probate court's order removing an executor, we apply an abuse of discretion standard.[2] A probate court has discretion to remove an executor

> [u]pon the petition of any person having an interest in the estate or whenever it appears to the probate court that good cause may exist to revoke the letters of a personal representative or impose other sanctions. . . .[3]

Thus, "the relevant question in reviewing a removal order is whether the trial court had grounds to conclude that there was 'good cause' for the removal."[4] We will not set aside the trial court's findings of fact unless the findings are clearly erroneous.[5]

Here the record supports the trial court's finding that the "accounting" Clark was charged with providing was actually prepared by Clark's office staff. Clark only briefly reviewed the six inches of documents gathered by those staff members. The "accounting" was not in a format compatible with the official form used by the probate

---

[1] According to the trial court's order, the stack of documents was "approximately 6 inches thick." The order also noted that the accounting, which had been prepared by persons other than Clark, was neither verified nor attested to by Clark as the executor. Clark testified that his review of the lengthy accounting was extremely brief.

[2] See *In re Estate of Moriarty*, 262 Ga. App. 241, 242 (2) (585 SE2d 182) (2003); *In re Estate of Dunn*, 236 Ga. App. 211, 214 (3) (511 SE2d 575) (1999).

[3] See OCGA § 53-7-55.

[4] See *In re Estate of Davis*, 243 Ga. App. 58, 63 (1) (532 SE2d 169) (2000).

[5] See *Fowler v. Cox*, 264 Ga. App. 880, 882 (592 SE2d 510) (2003).

court for accountings, as directed by the Court's order. The accounts and entries therein were not reconciled and contained errors in excess of $267,000. Two certified public accountants testified that the "accounting" as submitted by Clark required hours of additional work on their part in order to understand the financial condition of the Estate.

The record also showed that Clark filed an erroneous tax return on behalf of the Estate, which had to be amended, and Clark himself testified that he took a tax deduction knowing it was improper when he took it. When the improper deduction was questioned by a representative of St. Paul's, Clark suggested that the remedy was to wait for the statute of limitation to run on contesting the return, and then to distribute the funds in question. Clark also filed the federal estate tax return late, without seeking an extension.

Under the circumstances, the testimony and evidence in the record clearly support the conclusion that there was good cause shown to remove Clark as executor.[6] Therefore, the trial court did not abuse its discretion in ordering Clark's removal.

2. Clark asserts that the trial court erred in finding that he did not properly disclose the conflict of interest created by Clark serving as drafter of the will, executor and attorney for the Estate. We need not reach this issue because, as discussed above, the trial court had good cause to remove Clark as executor regardless of whether Clark made full disclosure of the conflict to his client.

3. Finally, Clark argues that the trial court erred in ordering him to forfeit commissions paid to him as executor. Specifically, Clark contends that the trial court lacked legal authority to order such forfeiture. We disagree.

Our analysis is governed by two principles of law. First, the trial court is authorized to deny compensation to an executor who breaches his fiduciary duty to the estate or its beneficiaries.[7] Second, an executor cannot be reimbursed for costs and expenses of litigation caused by his own misconduct.[8] Applying these two principles, it is clear that the trial court properly ordered Clark to forfeit the sums paid to him.

(a) An executor "is a fiduciary who, in addition to the specific duties imposed by law, is under a general duty to settle the estate as expeditiously and with as little sacrifice of value as is reasonable

---

[6] See id.

[7] See OCGA § 53-7-54 (a).

[8] See *In re Estate of Garmon*, 254 Ga. App. 84, 87 (2) (561 SE2d 216) (2002).

under all of the circumstances."[9] The Georgia Code further provides that:

> [i]f a personal representative . . . commits a breach of fiduciary duty . . . , a beneficiary of a testate estate . . . shall have a cause of action: (1) To recover damages; . . . (6) To remove the personal representative . . . ; and (7) To reduce or deny compensation to the personal representative. . . .[10]

The record shows that Clark, as executor, paid himself $69,782.50 in fees from the Estate. His services to the Estate included probating the will, arranging the funeral, compiling the assets, and arranging for their distribution. The record also reflects, however, that Clark caused unnecessary delay and expense to the Estate throughout his time as executor. He personally handled the sale of Mr. Arnsdorff's house, including showing it to prospective buyers, although the will did not require that the house be sold. The trial court was authorized to conclude that this unnecessary expenditure of time was detrimental to the value of the Estate and a breach of fiduciary duty.

Clark delayed distributing funds to St. Paul's because he wanted St. Paul's to create a trust in which to hold the funds; however, the will did not require such a trust, Clark had already distributed some funds without requiring a trust, and the trust which Clark drafted (at expense to the Estate) was not appropriate. Clark's only explanation for his actions, which prevented settlement of the Estate and caused it additional expense, was that matters between St. Paul's and him had gotten "adversarial." The trial court was authorized to find Clark's behavior unreasonable and a breach of his fiduciary duty.

Clark also demonstrated a general pattern of inattention to his basic duties as executor. A tax return prepared by Clark had to be redone at additional expense to the Estate because of his mistakes. The accounting Clark provided was disorganized and contained mathematical errors, resulting in St. Paul's having to pay an accountant to do additional work to determine the condition of the Estate.

The record supports the trial court's finding that Clark's handling of the Estate was generally unsatisfactory and resulted in "an unreasonable prolongation of the administration of the estate and postponed final distribution without justifiable cause." Clearly, the trial court concluded that Clark's actions throughout his time as executor were in breach of his fiduciary duty and, thus, he was not

---

[9] OCGA § 53-7-1 (a).
[10] OCGA § 53-7-54 (a).

entitled to compensation for any of his work.[11] Because Clark's numerous breaches of fiduciary duty pervaded his work as executor, the trial court was authorized to order that Clark forfeit commissions paid to him as executor.

(b) Moreover, Clark is not entitled to recover for his time or costs incurred in defending himself against the charges brought against him as executor. "[F]raud or misconduct on the part of an administrator giving rise to a suit against him by an heir would not authorize a charge against the estate for attorneys fees to defend the suit."[12] Much of the time for which Clark billed the Estate was spent defending himself against St. Paul's petition for an accounting and motion to remove him as executor. Indeed, more than half of Clark's fees were incurred after he was ordered to make the accounting in September 2001, although the Estate's assets were liquidated and either distributed or ready for distribution by that date, and Clark performed no further services to benefit the Estate. Clark also charged the Estate $9,564.75 for costs associated with opposing the petition for accounting. Because Clark's own misconduct caused the proceedings for an accounting and to remove him as executor, the trial court did not abuse its discretion in ordering Clark to repay all fees and expenses incurred in defending himself in these actions.[13]

*Judgment affirmed. Johnson, P. J., and Barnes, J., concur.*

DECIDED MAY 9, 2005 —
RECONSIDERATION DENIED JUNE 13, 2005 —

*Ranitz, Mahoney & Mahoney, Thomas J. Mahoney, Jr.*, for appellant.

*Gannam & Gnann, J. Hamrick Gnann, Jr., Ellis, Painter, Ratterree & Adams, Tracy A. O'Connell*, for appellee.

---

[11] This case is distinguishable from *Bryan v. Granade*, 257 Ga. 219 (357 SE2d 92) (1987), in which the Supreme Court held that an attorney's misconduct as administrator of an estate would not bar him from recovering fees for services rendered in litigation prior to his becoming administrator. The court in *Bryan* found that the attorney's litigation work was "distinct and severable" from his later duties as administrator. Id. at 221. In contrast, all work for which Clark seeks compensation is related to his duties as executor.

[12] *Chester v. Bouchillon*, 253 Ga. 175, 177 (4) (317 SE2d 525) (1984).

[13] See *Garmon*, supra at 87; *Ray v. Beneventi*, 229 Ga. 209, 213 (3) (190 SE2d 514) (1972).