A05A0948. RAY v. NATIONAL HEALTH INVESTORS, INC.
(633 SE2d 388)

MIKELL, Judge.

National Health Investors, Inc. ("NHI") filed a petition to remove Clyde Ray as administrator of the estate of his sister, Thelma R. Allgood ("Allgood"). After a hearing, the probate court granted NHI's petition, finding that various transactions undertaken by Ray were a conflict of interest and a breach of fiduciary duty. The probate court ordered an accounting, denied the payment of attorney fees incurred in defending the petition for removal, and ordered Ray to repay the Estate its lost money. Ray appeals, challenging various aspects of the probate court's order. For reasons discussed below, we affirm.

The relevant facts follow. From 1992 to 1998, NHI loaned Allgood $22,750,000 to refinance several nursing homes. In August 2000, Allgood and her husband, Thomas F. Allgood, Sr., were killed in a plane crash. Pursuant to the terms of Allgood's will, attorney Aubrey Rhodes was named executor of her Estate. Sometime in early 2001, attorney David Hudson replaced Rhodes as executor. As executor, Hudson continued to make monthly payments on the NHI loan on behalf of the Estate and, on March 20, 2001, received written notice from NHI of its claim as a creditor.[1] In November 2001, Hudson settled a dispute over half of the proceeds of a $5,000,000 life insurance policy on Allgood's life by causing the proceeds to be divided among various members of the Allgood family, including Ray. As part

---

[1] Ray testified that he was aware of NHI's claim as early as November 2001, but contends that NHI did not give notice it was accelerating the entire debt until June 17, 2002.

of the settlement, Ray was substituted as administrator of his sister's Estate, in December 2001.

On July 24, 2002, NHI filed suit in federal court to establish its claim against Allgood's Estate.[2] On August 14, 2002, Ray and Thomas F. Allgood, Jr., administrator of the estate of Thomas F. Allgood, Sr., filed an action for declaratory judgment in the Probate Court of Richmond County seeking a declaration that NHI failed to give notice of its claim timely and properly; that the signature of Thomas F. Allgood, Sr., on the loan guaranty was a forgery; and that no default had occurred. That action was removed to federal court.

NHI filed this action on February 24, 2004, seeking Ray's removal on grounds of breach of fiduciary duty, conflict of interest and not acting in the best interests of all persons interested in the Estate. At the hearing on the petition, Ray testified that he was aware that Hudson had acknowledged receipt of NHI's claim on March 20, 2001; that NHI is the Estate's only unpaid creditor; and that he paid himself $149,650 in compensation from December 2001 through August 2002. As to the specific transactions, Ray testified that at the time of her death, Allgood owned Orangeburg Nursing Home, Inc. ("Orangeburg"); that Ray was a director of Orangeburg at the time he qualified as administrator, and subsequently became its president; that in March 2002, he distributed all Orangeburg stock, 20 percent each to himself, his mother, and his siblings; that the Estate did not receive any money for the stock because "[i]t wasn't worth anything"; that in September 2002, he loaned to Orangeburg $375,000 on behalf of the Estate to open a line of credit; that Orangeburg repaid the loan without interest in September 2003; that Allgood purchased a lot on Clark Hill Lake, South Carolina (the "lake lot"), in 1984 using the proceeds of a litigation settlement Ray received in 1980; that Allgood then executed a quit-claim deed in Ray's name, which has not been found, but which allegedly was held in Thomas F. Allgood, Sr.'s office; that Ray's attorney prepared and filed a claim for the lake lot; that Hudson rejected Ray's claim because evidence showed that Ray was not the owner; that Hudson sold the lake lot for $120,149.10, and then placed the proceeds in escrow, stating that "they would be litigated over later"; that on May 24, 2002, Ray, as administrator and without court approval, settled his claim to the lake lot by writing himself a check for $120,149.10; that Ray held a power of attorney for his sister Barbara Dyches; that at one point, Dyches and Allgood jointly owned a condominium at Conifer Place; that the Conifer Place condominium

---

[2] According to NHI and the order of removal, NHI has a valid claim against Allgood's Estate in the amount of $29,796,003.91, as adjudicated by a consent order in the U. S. District Court for the Southern District of Georgia.

was sold in 1999; that on July 25, 2000, Allgood purchased a condominium at 1401 Port Royal, as evidenced by a warranty deed in her name only; that Dyches moved into 1401 Port Royal shortly after Allgood's death, but moved out several weeks later because she feared Hudson would sell the property; that 1401 Port Royal was sold for $235,000 and the proceeds placed into the Estate; that Dyches' attorney filed a proof of claim for the proceeds of the sale of the Conifer Place condominium; and that on May 24, 2002, Ray recognized Dyches' claim and issued her a check for $241,159.34. As to other transactions, Ray testified that Hudson distributed to him Allgood's Volkswagen automobile; that the vehicle was valued at $12,500; that Ray paid $2,500 each to other family members for the value of the vehicle, but did not pay the Estate anything; and that in March 2002, he distributed Allgood's personal effects and other personal property worth $65,000 to his family.

Following the hearing, the probate court found that Ray's transactions placed him in a conflict of interest with the Estate and constituted a breach of fiduciary duty. In its order, the trial court recited several findings of malfeasance: (1) Ray paid himself and his wife compensation in the "inconceivable" amount of $42,462.50 within two months of the date of qualifying as administrator; (2) Ray distributed Estate furniture without consideration and without approval of the court; (3) Ray made an unsecured loan in the amount of $375,000 to Orangeburg and signed the note as administrator and president of Orangeburg, thereby acting in an unauthorized dual capacity; (4) Ray transferred 100 percent of stock in Orangeburg to himself and other family members without any consideration or court order; (5) at the same time he held a power of attorney for Dyches and was administrator of the Estate, Ray sold a condominium purchased in Allgood's name and issued from the proceeds of that sale a check from an Estate bank account in the amount $241,159.45, payable to Dyches; (6) while administrator, Ray issued himself a check in the amount of $120,149.10, representing proceeds from the sale of the lake lot which he claimed to own; and (7) upon appointment, Ray had a conflict of interest in that he was administrator of the Estate, a beneficiary of the Estate, a claimant, and held a power of attorney for two other beneficiaries. The probate court rejected Ray's claim that it had no grounds to order his removal as the transactions at issue occurred prior to NHI's notice of acceleration, dated June 17, 2002. The court removed him as administrator, ordered an accounting, denied the payment of attorney fees incurred in defending the petition for removal from the trust, and ordered Ray to repay the Estate its lost money. This appeal followed.

1. Relying on *In re Estate of Adamson*,[3] Ray first argues that the order of removal is void because the probate court is without jurisdiction to decide matters of title to personal or real property. In support of this claim, Ray points to the following language in the probate court's order: (1) the sums of $120,149.10 and $241,159.45 are "Estate assets"; (2) "Ray is ORDERED to reimburse the Estate a sum of money equal to the fair market value of the personal property belonging to the Estate which was improperly distributed"; (3) "Ray is ORDERED to reconvey his stock in [Orangeburg] to the Estate" because the transfer was void as conflicted; and (4) "Ray is ORDERED to reimburse the Estate for the interest for [the Orangeburg] loan." NHI contends that the probate court did not decide title to assets, but rather "ordered [Ray] to redress his breaches of duty by reimbursement of money to the Estate personally taken or distributed as a result of his wrongful acts." We agree with NHI.

The probate court has no jurisdiction to adjudicate conflicting claims of title to real or personal property.[4] In this case, the probate court did not attempt to determine title to property, but rather, ordered Ray to return assets that belonged to the Estate, but had been distributed prematurely, without court approval, and with the appearance of impropriety. Moreover, as to the lake lot and the Conifer Place condominium, implicit in the probate court's order is a finding that the sales proceeds must be returned specifically *because* there exist disputes as to ownership, a determination of which must be made by a court with jurisdiction over the issue and not unilaterally by Ray. The order of removal is not void.

2. Ray next argues that the probate court's order did not conform to the issues pleaded. Specifically, Ray claims that the probate court erred in resolving conflicting claims to alleged property of the Estate and ordering reimbursement. We reject this contention for several reasons.

First, NHI's petition details every challenged transaction and states that, "[a]ctions need to be brought on behalf of the Estate against [Ray] and the Ray [f]amily to avoid the fraudulent and collusive transfers and settlements set out herein." Second, as held in Division 1, the probate court did not resolve conflicting claims to alleged property of the Estate. Third, Ray implicitly consented to adjudicating the issues. OCGA § 9-11-15 (b) provides that "[w]hen issues not raised by the pleadings are tried by express or implied

---

[3] 215 Ga. App. 613 (451 SE2d 501) (1994).

[4] Id. at 613 (1), citing Ga. Const. 1983, Art. VI, Sec. III, Par. I; OCGA § 15-9-30 et seq.; *Dix v. Dix*, 132 Ga. 630 (64 SE 790) (1909); *Johnson v. Johnson*, 199 Ga. App. 549 (1) (405 SE2d 544) (1991).

48

consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." Here, the *only* evidence presented at the hearing concerned the questionable transactions, and Ray testified for two days, without objection, about his handling of each transaction. Moreover, in his closing memorandum to the probate court, Ray disputed all of NHI's allegations of wrongdoing and argued that his actions "in no way constitute cause to remove him." As the question of the legitimacy of the transactions was properly before the court, the probate court did not err in addressing it or in granting the relief necessary to protect the Estate.[5]

3. Ray's claim that the probate court erred in ordering an accounting during the removal proceeding because he was not served with a citation to appear before the court for a settlement of accounts as required by OCGA § 53-7-63 is meritless.

OCGA § 53-7-63 provides that,

> [u]pon proof of citation pursuant to Code Section 53-7-62, the probate court may proceed to make an account, hear evidence upon any contested question, and make a final settlement between the personal representative and the heirs or beneficiaries. The settlement may be enforced by a judgment, writ of fieri facias, execution, or attachment for contempt.

OCGA § 53-7-62 (a) provides that, "[a]ny person interested as an heir or beneficiary of an estate or the probate court may, after the expiration of six months from the granting of letters, cite the personal representative to appear before the probate court for a settlement of accounts."

Pretermitting whether the probate court "made an account" as contemplated by OCGA § 53-7-63, or ordered Ray to provide an accounting within thirty days, as authorized by OCGA § 53-7-55, the record belies Ray's claim that the probate court's order for accounting is procedurally defective and void because it did not comply with the requirements of OCGA § 53-7-63. In the petition's prayer for relief, filed on February 24, 2004, NHI specifically demanded that a citation and rule nisi issue and that Ray "be made to appear and submit to a settlement of accounts." On the same date, the probate court issued a "Citation and Rule Nisi" which ordered Ray to appear

> to show cause why he should not be removed from his administration on account of mismanagement, breach of fiduciary duty, self-dealing, and conflicts of interest, why

---

[5] See OCGA § 53-7-55.

sanctions and remedies provided by law including those under OCGA § 53-7-55 for security, accounting and an order requiring [c]ourt approval of disbursements and transfers should not issue.

Ray was personally served with a copy of the petition and the "Citation and Rule Nisi" on February 27, 2004, and never raised any objection to the alleged procedural defect in his answer or during the hearing. The probate court's order is not void.

4. Ray next argues that the probate court erred in finding that he could not compensate himself based on an hourly rate without court approval. Specifically, Ray argues that since Allgood's will provided for compensation at an hourly rate, and Rhodes and Hudson were paid at an hourly rate, he should be similarly compensated. We disagree.

Allgood's will appoints her husband as executor, and names Aubrey C. Rhodes, Jr. as the successor executor in the event of her husband's death. The will further provides that,

> AUBREY C. RHODES, JR.[,] shall receive a fee for his services as Executor and Trustee equal to regular hourly rate for himself or the members and staff of any firm with which he may be working, times the number of hours spent for all services rendered for the Trust or the estate, plus any expenses incurred; and also shall be entitled to an annual fee.

The record reflects that from December 5, 2001, through August 2002, Ray's hourly compensation totaled $149,650. From December 5, 2001, through February 5, 2002, Ray paid himself and his wife approximately $42,000. From February 5, 2002, through August 2002, Ray paid himself $107,187.50. Ray testified that he paid himself $125 per hour on advice from his lawyer. The probate court ruled as follows:

> Ray is ORDERED to reimburse the Estate the sum of $42,462.50 within thirty (30) days of the entry of this Order, for personal representative compensation improperly taken on or before February 5, 2002, and prior to the entry of this Order. Ray's method of taking compensation was without court approval and is not authorized by the Decedent's Will. It is the further Order of this court, that . . . Ray reimburse the Estate for all other monies that he has received from the Estate as compensation for services rendered. . . . Ray is entitled to commissions as provided by OCGA § 53-6-60 (b),

but not compensation at an hourly rate. Even if Ray was entitled to compensation at an hourly rate, the rate and time charged by Ray for his services is excessive in light of his experience, qualifications and past income stream.

"An administrator or guardian is an agent appointed by law, whose duties are fixed by law and whose compensation is fixed by law. The amount he charges is . . . fixed by law and determined by the judicial action of a court of competent jurisdiction."[6] As the probate court appointed Ray to serve as administrator of his sister's Estate, his compensation was controlled by OCGA § 53-6-60 (b). We are not persuaded otherwise by Ray's claims that Allgood's will mandates hourly compensation and that Hudson was compensated on an hourly basis. The probate court did not err in finding that Ray is entitled to fees only in accordance with OCGA § 53-6-60 (b).

5. Ray contends that the probate court erred in removing him as administrator because the will granted him broad powers and all transactions predated NHI's notice that it had accelerated the loan.

We review a probate court's order removing an administrator under an abuse of discretion standard.[7] A probate court has discretion to remove an administrator

[u]pon the petition of any person having an interest in the estate or whenever it appears to the probate court that good cause may exist to revoke the letters of a personal representative or impose other sanctions.[8]

"[T]he relevant question in reviewing a removal order is whether the trial court had grounds to conclude that there was 'good cause' for the removal."[9] Where the personal interests of the representative of an estate conflict, or *might* conflict, with the interest of the estate or the beneficiaries, such fact may be sufficient grounds for removal.[10] "We will not set aside the [probate] court's findings of fact unless the

---

[6] (Citations omitted.) *McDow v. Corley*, 154 Ga. App. 575, 576 (269 SE2d 38) (1980). See OCGA § 53-6-60 (b) (3) ("If the personal representative's compensation is not specified in the will or any separate written agreement, the personal representative for services rendered shall be entitled to compensation equal to: . . . (3) Reasonable compensation, as determined in the discretion of the probate court.").

[7] See *In re Estate of Arnsdorff*, 273 Ga. App. 612, 613 (1) (615 SE2d 758) (2005).

[8] OCGA § 53-7-55. See *In re Estate of Jackson*, 241 Ga. App. 392, 394-395 (2) (526 SE2d 884) (1999) ("[t]he discretionary powers of the probate court under OCGA § 53-7-55 are very broad and may be exercised whether the violation of law under consideration is a minor or major matter") (citations and punctuation omitted).

[9] *In re Estate of Davis*, 243 Ga. App. 58, 63 (1) (532 SE2d 169) (2000).

[10] See *Nesmith v. Pierce*, 226 Ga. App. 851, 852 (1) (487 SE2d 687) (1997). See also *Ringer v. Lockhart*, 240 Ga. 82 (239 SE2d 349) (1977), stating the following:

findings are clearly erroneous."[11] Here, the record amply supports the probate court's finding that Ray distributed Estate money without court approval; had a conflict of interest because, while administrator, he held power of attorney for two beneficiaries and was a claimant himself; and breached his fiduciary duty by making distributions before paying an Estate debt. At the very least, the record shows that Ray allowed himself to be placed in a position where his personal interests might conflict with the interests of the Estate. Moreover, during an exchange between Ray and the probate judge, Ray himself admitted a conflict of interest and suggested that his removal would be welcome:

> [Ray]: Your Honor, you know what I'd like for you to do? . . . I wish you'd issue some kind of order where somebody, a different party, could be brought in since I'm in such a big conflict of interest here and let's litigate these things over again and let them decide.
> . . .
> [Ray]: I would like this arbitrated out to whatever we got to do because my name means a lot to me. You can relieve me temporarily until we get it in front of you.
> . . .
> The Court: If I remove you . . .
> [Ray]: Yes, sir, then I'd be through with all the headaches.

Relying upon OCGA § 53-12-232, Ray asserts that the will granted him expanded powers. Nonetheless, Ray is not excused from his fiduciary duties.[12] As the record shows that there was good cause to revoke Ray's letters of administration, the probate court did not abuse its discretion in ordering his removal.

---

The broad rule of equity, applicable alike to agents, partners, guardians, executors is that it is the duty of a trustee not to accept any position or to enter into any relation or to do any act inconsistent with the interest of the beneficiary. . . . Whenever he has placed himself in a position that his personal interest has or may come in conflict with his duties as trustee, a court of equity never hesitates to remove him. In such circumstances the court does not stop to inquire whether the transactions complained of were fair or unfair; the inquiry stops when such relation is disclosed.

(Citations and punctuation omitted.) Id. at 85. Accord *Bloodworth v. Bloodworth*, 260 Ga. App. 466, 471 (1) (579 SE2d 858) (2003) ("[a] beneficiary need not show that the fiduciary actually succumbed to temptation; it is sufficient to show the fiduciary allowed himself to be placed in a position where his personal interests might conflict with the beneficiary's interests") (citation omitted).

[11] (Footnote omitted.) *Arnsdorff*, supra. See also *In re Estate of Zeigler*, 273 Ga. App. 269, 270 (1) (614 SE2d 799) (2005).

[12] See *Bloodworth*, supra at 472 (1).

6. Finally, Ray argues that the probate court erred in prohibiting the Estate from reimbursing him, as administrator, for the expenses incurred in defending NHI's action. We disagree.

"Except as otherwise provided in the will, a personal representative is authorized: . . . To provide competent legal counsel for the estate according to the needs of the estate."[13] However, an administrator may not obligate the estate for attorney fees for the costs of litigation brought on by the administrator's own fault or misconduct.[14] In *Armstrong v. Boyd*,[15] our Supreme Court held that the outcome of the litigation determines whether or not an estate is responsible for the administrator's legal fees:[16]

> If the conduct of the administrator brings about the situation that gives rise to a suit against him by an heir, he is not entitled to charge counsel fees to protect him in his own fault or misconduct. But where there is no actual misconduct in the administration, but only a charge of it, the administrator representing all the heirs should be allowed a reasonable amount to retain counsel in defending an unjust charge. . . . [I]f the suit is not justifiable — and the test to determine that would seem to be the result of the issue in favor of the administrator — the administrator should be allowed the money expended by him in the employment of counsel to defend the suit brought against him.[17]

Because the evidence shows that Ray's breach of fiduciary duties necessitated NHI's suit, he is not entitled to reimbursement of his expenses from the Estate, and the probate court did not err in prohibiting such a refund.[18]

*Judgment affirmed. Blackburn, P. J., and Adams, J., concur.*

DECIDED JUNE 21, 2006.

*Brownstein & Little, Kevin S. Little,* for appellant.

---

[13] OCGA § 53-7-6 (4).

[14] See *Nesmith*, supra at 853 (3).

[15] 140 Ga. 710 (79 SE 780) (1913).

[16] Id. at 712.

[17] (Citation omitted.) Id.

[18] See *In re Estate of Garmon*, 254 Ga. App. 84, 87-88 (2) (561 SE2d 216) (2002). See also *Arnsdorff*, supra at 616 (3) (b) (where executor's own misconduct caused the proceedings for an accounting and to remove him as executor, the trial court did not abuse its discretion in ordering him to repay all fees and expenses incurred in defending himself in these actions).

*Stites & Harbison, J. D. Humphries III, Samantha L. Imber, Erin Dougherty*, for appellee.