**FIFTH DIVISION**
**REESE, P. J.,**
**MARKLE and COLVIN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed. https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**October 23, 2020**

# In the Court of Appeals of Georgia

A20A0856. IN RE ESTATE OF GEORGE THOMAS CORNETT, JR.

REESE, Presiding Judge.

At the time of his death on November 25, 2015, George Thomas Cornett, Jr. ("Tom") was married to Sarah Cornett ("Sarah"), and had five surviving adult children. Sarah appeals from an order of the Probate Court of Hall County, removing her as executor of Tom's estate (the "Estate") and ordering her to return certain estate assets and to pay certain funds back to the estate. On appeal, Sarah argues that the probate court erred in exercising jurisdiction over the removal petition because identical issues were first pending in superior court, erred in denying her right to a jury trial, and erred in removing her as executor without a factual basis to do so and in contradiction of Tom's Last Will and Testament (the "Will"). The Appellees, Tom's surviving adult children and the only child of a daughter who predeceased

Tom, filed in this Court a Motion to Dismiss the jurisdictional claim of error. For the reasons set forth infra, we deny the Appellees' Motion to Dismiss and affirm the probate court's judgment.

In January 2016, the probate court admitted the Will to probate. In November 2016, the probate court discharged the original executor of the Estate, appointed Sarah as successor executor, and issued letters testamentary to her.

On February 5, 2018, the Appellees filed a verified Petition for Accounting and Settlement of Accounts ("Petition for Accounting") in the probate court. In the Petition for Accounting, the Appellees alleged that they "ha[d] conveyed to [Sarah] questions and concerns regarding the administration of the Estate and the handling of its assets, and they ha[d] repeatedly requested specific information and documents regarding the Estate and its assets." However, "[Sarah] refuse[d] to settle the Estate or produce the requested documentation regarding the management and administration of the Estate's assets, which . . . led to additional concerns of [the Appellees]." The Appellees requested an order pursuant to OCGA § 53-7-62 citing Sarah to appear before the probate court for an accounting and settlement of accounts and to produce a list of documents substantiating certain expenditures.

Three days later, the probate court issued a citation, ordering Sarah to produce to the court within 30 days of being served all records and evidence related to the administration of the Estate since her appointment as executor. Sarah answered and filed a very limited accounting, which showed questionable expenditures.

In July 2018, the probate court held a hearing, at which Sarah was extensively cross-examined. Giving deference to the probate court's opportunity to judge Sarah's credibility at the hearing,[1] the transcript reveals that Sarah failed to provide answers or additional information regarding the Estate. For example, Sarah could not explain what work had been done on behalf of the Estate to justify paying the law firm of Alston & Bird, LLP, over $92,000. She also had not collected on promissory notes owed to the estate by her son, Gregg Gordon ("Gregg"), or Appellee George Thomas Cornett, III ("Tommy"),[2] other than to allow Gregg to assume Tommy's loan pursuant to unknown terms.

---

[1] See *In re Estate of Zeigler*, 295 Ga. App. 156, 158 (1) (671 SE2d 218) (2008).

[2] Although Tommy withdrew as a petitioner on the Petition for Accounting, he later joined the Petition for Removal of Executor and Appointment of Successor, participated in a hearing in August 2019, and joined in the response brief filed in this Court.

Accordingly, at the conclusion of the hearing, the probate court found Sarah in contempt and gave her 30 days to comply — "to file every single detail[,]" including providing copies of all bills for professional services, with said bills being specific enough to determine what work was done and to prove its necessity to the Estate. In its citation issued a week after the hearing, the probate court noted that it was "unclear what [Sarah had] paid and what the original Executor [had] paid[,]" and that it was "unclear how much Gregg owe[d] the estate[.] The probate court added:

> [I]t is important to note that [Sarah] could not recall the hourly fee she pa[id] her attorney, Mr. [Benjamin] White of Alston [&] Bird; who represent[ed the family business] GTO2000[,] or Gregg; why she met with Mr. White with [her sons] Blair [Gordon] and Gregg[ ]; why she needed to pay $92,000 to Alston [&] Bird (or even if that is the amount she ha[d] paid); the value of [the family business,] GTO2000[, Inc.,] that she paid [an accounting firm] to calculate; and most notably, her former last names, as well as many other answers to questions she was asked.

The probate court found further that the Estate had paid a $100,000 debt on real property owned by Sarah personally, which Sarah acknowledged at the hearing was a "mistake" that she had not corrected. Further, "[Sarah had] paid 2017 taxes with estate funds on all real estate owned by [Sarah] personally because she fe[lt] the

4

estate and trust [were] one so she [was] entitled to the funds remaining in the estate not yet placed in the trust."

On July 3, 2019, almost a year after the hearing, the Appellees filed a Petition for Removal of Executor and Appointment of Successor ("Petition for Removal"), in which they requested the probate court to revoke Sarah's letters testamentary and find her unfit to serve as executor of the Estate or the trustee of any trust created under the Will. The probate court issued a citation to Sarah to appear and show cause why the requested relief should not be granted.

Sarah filed an objection to the probate court's jurisdiction under the "first-filed rule," as she had filed a complaint for a declaratory judgment in superior court four months earlier, in March 2019. Sarah also filed an answer to the Petition for Removal, in which she demanded a jury trial.

The probate court held a second hearing on August 21, 2019. At the hearing, the probate court first addressed the jurisdictional issue. The probate court acknowledged that it lacked jurisdiction to remove a trustee, but pointed out that Sarah had a fiduciary duty until she was discharged as executor and the estate was closed. The court recalled Sarah's nonresponsiveness to questions at the first hearing, and noted that there was no way at that time "to decide if there was money missing[

or] to decide what had happened." The probate court found that the Petition for Accounting was still properly before it, and that it was too late to request a jury trial or discovery as to that petition. The court added that it was not dealing with the Appellees' Petition for Removal, but emphasized that it needed no such petition before it to remove an executor.

The Appellees then cross-examined Sarah with regard to the information that had been recently provided. Even when confronted with the transcript from the prior hearing, Sarah denied having called the payoff of the mortgage "a mistake" that she would repay. Sarah acknowledged that there was originally $374,128 in the Estate, which had decreased to $234,634 by the time she was appointed as successor executor. Less than $5,000 remained in the Estate when Sarah transferred the balance to the trust in early 2019.

The accounting Sarah provided prior to the second hearing reflected payments to Alston & Bird from Estate funds of over $150,000 (including the $92,694 paid as of the prior hearing) for work that the probate court found did not benefit the Estate. As the probate court found, "Sarah used estate funds to pay her attorney's fees before ever being appointed Executor while making plans to oust the original executor and take control."

6

The probate court entered a detailed order on the Petition for Accounting. In reciting the procedural history, the probate court noted that the Appellees had filed a Petition for Removal, but that "[t]hat Petition has yet to be considered . . . and is not the subject of the present order." After making findings of fact discussed more fully below, the probate court ordered Sarah: removed as executor for breaching her fiduciary duty, to return all assets that had been deposited into a trust back into the Estate, to repay all fees and commissions she had taken as executor, and to repay various expenditures (including, inter alia, the $100,724 loan on real property, $89,779.58 in attorney fees through the accounting period as well as any subsequent fees that were not for work necessary for the estate, and $7,030 in accountant fees). This appeal followed.

We review a probate court's order removing an executor for abuse of discretion.[3] "[T]he relevant question in reviewing a removal order is whether the trial court had grounds to conclude that there was 'good cause' for the removal. We will not set aside the trial court's findings of fact unless the findings are clearly

_____

[3] *In re Estate of Arnsdorff*, 273 Ga. App. 612, 613 (1) (615 SE2d 758) (2005).

7

erroneous."[4] With these guiding principles in mind, we turn now to Sarah's claims of error.

1. Sarah argues that the probate court lacked jurisdiction under the first-filed rule and because superior courts have exclusive jurisdiction over trusts. "Jurisdiction is a question of law to which appellate courts apply a de novo standard of review."[5]

As an initial matter, we agree with Sarah[6] that the superior court's recent dismissal of her declaratory judgment action does not render this claim of error moot. Accordingly, we deny the Appellees' motion to dismiss.

However, we hold that the probate court properly exercised jurisdiction. OCGA § 15-9-30 (a) provides in part:

---

[4] Id. (punctuation and footnotes omitted); see also OCGA § 53-7-55 ("Upon the petition of any person having an interest in the estate or whenever it appears to the probate court that good cause may exist to revoke the letters of a personal representative or impose other sanctions, the court shall cite the personal representative to answer to the charge.").

[5] *Prabnarong v. Oudomhack*, 334 Ga. App. 723, 725 (780 SE2d 393) (2015) (punctuation and footnote omitted).

[6] Sarah relies on our decision in *In re I. B.*, 219 Ga. App. 268, 270-272 (464 SE2d 865) (1995) (physical precedent only). We find the reasoning in that case persuasive, but take this opportunity to remind the parties of Court of Appeals Rule 33.2 (Judgment as Precedent). As *I. B.* was decided well before August 1, 2020, this opinion is citable only as persuasive authority. See Rule 33.2 (a) (2).

Probate courts have authority, *unless otherwise provided by law*, to exercise original, exclusive, and general jurisdiction of the following subject matters: (1) The probate of wills; (2) The granting of letters testamentary and of administration and the repeal or revocation of the same; (3) All controversies in relation to the right of executorship or administration; [and] (4) The sale and disposition of the property belonging to, and the distribution of, deceased persons' estates[.][7]

(a) Sarah first contends that OCGA §§ 9-4-4 and 15-9-127 fall in the "otherwise provided by law" language of OCGA § 15-9-30 (a) and thus limit the exclusive jurisdiction of the probate courts. Under the applicable version of OCGA § 15-9-127 (1),[8] "[p]robate courts . . . have concurrent jurisdiction with superior courts with regard to the proceedings for: [d]eclaratory judgments involving fiduciaries pursuant to Code Section[ ] 9-4-4[.]" And, under the applicable version of OCGA § 9-4-4, an executor or beneficiary can seek declaratory relief, inter alia, "[t]o direct the executor[ ] to do or abstain from doing any particular act in h[er]

---

[7] (Emphasis supplied.); see also *Traub v. Washington*, 264 Ga. App. 541, 547 (7) (591 SE2d 382) (2003) ("[T]he probate court has exclusive, original jurisdiction over a claim that an executor has breached a fiduciary duty.").

[8] Both OCGA §§ 15-9-127 and 9-4-4 have been rewritten, but the amendments do not take effect until January 1, 2021.

9

fiduciary capacity; or [t]o determine any question arising in the administration of the estate or trust, including questions of construction of wills and other writings."[9]

Although the Declaratory Judgment chapter is to be "liberally construed and administered[,]"[10] it is also true that, "[w]ith respect to areas in which the probate court has been given exclusive, original subject matter jurisdiction, its authority is broad."[11] Under the facts of this case, we agree with Appellees that Sarah's complaint was "an improper effort to receive a Superior Court blessing on actions the Probate Court had already condemned."

In her declaratory judgment complaint, filed in March 2019, after Sarah had transferred what little remained in the Estate into the marital trust, she prayed "[t]hat the [superior c]ourt issue a declaration and judgment that (i) [Sarah] ha[d] properly administered [the] Estate and ha[d] not committed any breach of her fiduciary duties;

---

[9] OCGA § 9-4-4 (a) (2), (3) (2015).

[10] OCGA § 9-4-1.

[11] *Benefield v. Martin*, 276 Ga. App. 130, 130-131 (622 SE2d 469) (2005) (citation and punctuation omitted) (affirming dismissal of complaint for damages and equitable relief and holding that the superior court had no basis to exercise its concurrent jurisdiction).

10

and (ii) [Sarah], consistent with [Tom's] directive in his Will, properly transferred all remaining assets of the Estate into the Marital Trust."

At this point, the Petition for Accounting had been pending for over a year. After the first hearing in July 2018, the court had issued a second citation finding Sarah in contempt, directing her to file a full accounting, and making findings of fact regarding Sarah's management of the Estate and her inability to answer many of the questions she was asked. Specifically, the probate court found that Sarah had not collected on promissory notes owed to the Estate, that it was unclear how much Gregg owed the Estate, that Sarah could not explain why $92,000 in attorney fees was necessary for the Estate, that she had paid off a debt on real estate that she knew was a mistake but had not corrected, and that she had paid her personal taxes "because she fe[lt] the estate and trust [were] one so she [was] entitled to the funds remaining in the estate not yet placed in the trust."

Although Sarah provided the probate court and the Appellees with an accounting following that citation and within 30 days of the first hearing, she failed to pay the filing fee, causing the accounting not to be filed until after the second hearing in August 2019. Meanwhile, in September 2018, the Appellees filed a request for a second hearing on their Petition for Accounting and settlement of accounts and

11

on Sarah's alleged failure to fully comply with the citation. A hearing was not held until August 2019, however, apparently because of the parties' schedules and efforts at settlement.

Based on the foregoing, the probate court did not err in finding that it had jurisdiction. Sarah argues that she was not on notice because the Petition for Accounting did not raise breach of fiduciary duty, but merely asked the court to compel her to appear and produce documents. Even taking this statement at face value, she was clearly on notice by the end of the first hearing in July 2018 that she needed to document and explain certain expenditures and, based on her own characterization of the "mistake" in paying off a $100,000 real estate loan, repay the Estate for at least some of the expenditures. She also could not have reasonably thought that the accounting she provided after the first hearing resolved these issues, in light of the prompt request for a hearing filed by the Appellees and the detailed allegations in the settlement demand from the Appellees a week and a half before Sarah filed her complaint in superior court. Accordingly, her reliance on the first-filed rule is misplaced.

(b) Sarah also contends that the probate court improperly encroached upon the marital trust, over which it lacked jurisdiction, by ordering her to divest assets from the trust and return them to the Estate. This argument is without merit.

When Sarah transferred the remaining funds from the Estate to the marital trust in early 2019, she did so in her role as executor of the Estate, subject to the authority of the probate court.[12] Sarah had neither provided a final accounting nor petitioned for discharge. "Until [s]he is properly discharged or otherwise relieved by law, an executor retains the authority of that appointment and the obligations of that fiduciary relationship with those [s]he represents."[13]

2. Sarah argues that the probate court erred in denying her demand for a jury trial, which she timely made after the Appellees filed their Petition for Removal.

OCGA § 15-9-121 (a) provides in part that "[a] party to a civil case in the probate court shall have the right to a jury trial if such right is asserted by a written demand for jury trial within 30 days after the filing of the first pleading of the party or within 15 days after the filing of the first pleading of an opposing party, whichever is later[.]"

---

[12] See *Perdue v. McKenzie*, 194 Ga. 356, 359-364 (1) (21 SE2d 705) (1942).

[13] *Liner v. North*, 188 Ga. App. 677, 679 (2) (373 SE2d 846) (1988).

Although the parties agree that the denial of a demand for a jury trial is reviewed for an abuse of discretion, we do not apply such a deferential standard in light of the mandatory language of the statute,[14] but instead review the factual findings in the probate court's determination for clear error and its legal conclusions de novo.[15]

Because Sarah did not request a jury trial until August 2019, the question is whether the "first pleading" is the Petition for Accounting, filed in February 2018, or the Petition for Removal, filed in July 2019.

As discussed above, the probate court clearly stated at the second hearing and in its subsequent order that it was not considering the Petition for Removal. At the outset of the second hearing, the probate court emphasized, "there was no way for us to handle the [P]etition [for Accounting at the first hearing] because not enough information was brought forth. . . . So it was left open at that time. There was no way to decide if there was money missing." We find no error in the probate court's

---

[14] Sarah cites to a case reviewing the denial of a jury trial demand under the predecessor statute to OCGA § 21-2-526 (regarding jury trials in election contests). See *Taggart v. Phillips*, 242 Ga. 454, 455 (249 SE2d 245) (1978) ("We find no abuse of discretion in the denial of a jury trial. Code Ann. § 34-1707.").

[15] See *Arnsdorff*, 273 Ga. App. at 613 (1).

14

conclusion that Sarah's jury trial demand was untimely based on the filing dates of the Petition for Accounting and Sarah's answer thereto.[16] Sarah's reliance on our decision in *In re Estate of Zeigler*[17] in this context is misplaced.

3. Finally, Sarah argues that the probate court erred in removing her as executor because it ignored provisions in the Will. Sarah cites no legal authority in this section of her brief,[18] relying instead on the language of the Will.

We find no abuse of discretion in the probate court's finding of good cause. Of particular concern to the probate court was its finding that Sarah had paid around $90,000 to Alston & Bird for services that did not benefit the Estate, and arguably harmed it. Based on the evidence presented at the 2019 hearing, including incriminating e-mails sent by Sarah and her attorney, Alston & Bird's billing records, and Sarah's own testimony, we find no clear error.

---

[16] See *Simmons v. Harms*, 287 Ga. 176, 178-179 (1) (c) (695 SE2d 38) (2010).

[17] 259 Ga. App. 807, 808-809 (2) (578 SE2d 519) (2003) (reversing where a beneficiary's petition only requested information about a house that she would inherit under the will, the rule nisi ordered the executor to show cause why the relief prayed for should not be granted, and the probate court ordered the executor removed for failure to appear and respond to the petition and rule nisi).

[18] See Court of Appeals Rule 25 (c) (2) ("Any enumeration of error that is not supported in the brief by citation of authority or argument may be deemed abandoned.").

We note that Sarah has made several misstatements in her brief with respect to this claim of error. For example, she states that "the Probate Court concluded that [Sarah] was not entitled to hire a lawyer[,]" when in fact the probate court stated "while [Sarah] is certainly entitled to seek professional help, she may not pay attorney fees benefiting an entity or person other than the [E]state." The probate court continued:

> Fees also were paid to Alston & Bird to defend the executrix in this action. [Sarah] stated she hired an attorney to "fend off the children." The fault in such logic lies in the fact that such a defense against the Children started when the Children questioned [Sarah's] management of the estate by asking for information. [Sarah] paid her attorneys to prevent the Children from getting that information, even though they were entitled to it. Then when the Children were forced to seek an Accounting, [Sarah] paid attorneys to defend her while providing an insufficient accounting. The Court of Appeals, in In *Re Estate of Arnsdorff*,[19] states that a personal representative who has been involved in litigation due to his own conduct cannot be reimbursed for costs and expenses of that litigation. It would be wrong for the estate to pay for attorney's fees created by the misdeeds of the personal representative. Furthermore, [in] *In Re Estate of Arnsdorff*, it was determined that the court did not abuse its discretion when it ordered the executor to repay all the fees and expenses incurred, because the

---

[19] 273 Ga. App. at 614-616 (3).

16

executor's breach of fiduciary duty "pervaded" his entire work as executor. Additionally, if the probate court is unable to determine which attorney fees stemmed from the misconduct and which were incurred solely for estate business, because the actions of the administ[rator] are so intertwined that a finding of good faith is impossible, the probate court can deny all attorney fees.[20]

We find no reversible error in the probate court's findings and conclusions.[21] Further, to the extent that Sarah has not abandoned any challenge to the amount that the probate court ordered her to return, this argument is without merit for the reasons given in the probate court's order.

*Judgment affirmed. Markle and Colvin, JJ., concur.*

---

[20] (Additional citations omitted.)

[21] See *Arnsdorff*, 273 Ga. App. at 614-616 (3).