297 Ga. 490
FINAL COPY

S15A0403. MYERS v. MYERS.

NAHMIAS, Justice.

James T. Myers, Sr. (Decedent) executed his last will and testament on June 9, 2008, and died on September 29, 2012. He was survived by his wife and two sons, James T. Myers, Jr. (Appellant) and Anthony Lee Myers (Appellee). Appellant was appointed executor by the will. After a motion by Appellee and a hearing, the probate court entered an order on August 1, 2014, finding that Appellant had violated his fiduciary duty in numerous ways, removing him as executor, and appointing a county administrator to replace him. Appellant filed a timely notice of appeal to this Court. We affirm.

1. The will directs that Decedent's house be placed in trust as a life estate for his wife, with the remainder to be divided between Appellant and Appellee, who must pay equally for the house's maintenance. Except for certain personal effects, the rest of Decedent's estate is divided evenly into separate trusts for each son. The will names Appellant as the first choice for executor and trustee and Appellee as the second choice. The probate court admitted the

will to probate in solemn form on November 15, 2012, and letters testamentary were issued to Appellant that day. As executor, Appellant established the trusts and began managing Buckshot Properties, LLC (Buckshot), a company previously owned solely by Decedent, which is one of the estate's major assets. During his time as executor, Appellant withdrew $63,401.05 in executor fees.

On October 7, 2013, Appellee filed a "Petition To Cite Executor To A Settlement Of His Account And Further To Inquire Whether The Executor Should Be Sanctioned, Including Removal, Due To Breach Of Fiduciary Duty, Misconduct And/Or Mismanagement Of The Estate Assets." The petition alleged, among other things, that Appellant had failed to provide complete information about the estate, used estate funds to pay personal expenses, and used a truck owned by the estate as his personal vehicle. The petition also alleged that Appellant had a conflict of interest as executor of the estate because he was operating a business on land owned by Buckshot without paying rent, was using estate resources to fund Buckshot's expenses, and was paying personal expenses from Buckshot's business account. In his answer to the petition, Appellant sought to remove Appellee as a beneficiary under the will based on a portion of the will's in terrorem clause that requires the removal of

2

a legatee or devisee who unsuccessfully seeks the removal of a personal representative.

Appellee then filed an amended petition "expressly withdraw[ing] his request that the Executor be removed and for other sanctions and expressly limit[ing] his Petition to request an accounting for the Executor." The amended petition, however, repeated the original petition's allegations of breach of fiduciary duty and conflict of interest. The probate court issued a scheduling order, setting a hearing on the "Petitions to Cite Executor and Motion to Remove Executor." Appellant filed a motion again requesting the removal of Appellee as a devisee or legatee of the will, this time based on the will's provisions requiring disinheritance of any beneficiary who "objects in any manner to any action taken or proposed to be taken in good faith by my Personal Representative" or who "claims entitlement to (or any interest in) any asset alleged by my Personal Representative to belong to my Probate Estate." The court then issued an amended scheduling order setting a hearing on the "Petitions to Cite Executor, Motion to Remove Executor, and Motion to Remove Devisee or Legatee."

The hearing was held on May 21, 2014. At the outset, Appellee

3

acknowledged that his petition to remove Appellant as executor had been withdrawn, but in his closing argument, he noted that although he had withdrawn his original petition in the face of the threat of disinheritance, the probate court still had "the authority to take action." Appellant admitted that he was driving a truck belonging to the estate and that he used estate funds to pay for maintenance on Decedent's house. Appellant also testified that he had worked for Decedent at Buckshot and continued to run the business after Decedent's death, including withdrawing funds from the estate for the company and using money from the company to pay his personal bills.

On August 1, 2014, the probate court issued an order removing Appellant as executor and appointing a county administrator, explaining: "[A]lthough [Appellee] has not requested the Court remove the Executor, after hearing the evidence presented at the hearing . . . the Court finds that good cause exists to remove [Appellant]." The probate court concluded that Appellant had a conflict of interest and had breached his fiduciary duty in numerous ways, including by using the estate's truck, using estate funds to pay maintenance on the house, not paying rent for his use of Buckshot's property, not keeping records of rent paid by other tenants to Buckshot, and using Buckshot's business checking account

4

to pay personal bills. The court found that Appellant had overpaid himself by $53,066.70 in executor's fees and ordered him to repay that amount as well as $43,339.21 that Buckshot wrongfully received from the estate. The court determined that Buckshot's operating agreement requires the company to be dissolved upon Decedent's death, so Appellant was not permitted to use estate funds to continue operating it. The court ordered that the new executor "begin to wind up the affairs" of Buckshot.

On appeal, Appellant does not challenge the probate court's factual findings, but he contends that his continued operation of Buckshot was proper, that he lacked notice that the hearing could result in his removal as executor, and that the court's appointment of a county administrator as executor was reversible error. None of those contentions has merit.[1]

2.     The probate court found that Appellant breached his fiduciary duty as executor in numerous ways, but he challenges only those rulings regarding his operation of Buckshot.

(a)     Appellant argues that his continued operation of Buckshot was

---

[1] The probate court also froze the estate's assets, ordered the appointment of a special co-trustee, denied Appellant's motion to remove Appellee as a beneficiary, and ordered Appellant to repay to the estate $8,000 in attorney fees. Appellant does not challenge these rulings.

consistent with Decedent's intentions because, although the will does not mention Buckshot, it gives the executor all of the powers set out in former OCGA § 53-12-232, which included the power "to continue or participate in the operation of any business or other enterprise, whatever its form or organization."[2] The will further provides that the executor "shall have . . . the power to form, terminate, continue or participate in the operation of any business enterprise including . . . a limited liability company," and authorizes the executor to make investments, borrow, lease, make repairs, and "retain any real estate interests, closely held securities or affiliated companies or business interests, and to sell or dispose of such interests only after careful consideration and after determining that sale or disposition is under the existing circumstances in the best interests of" the beneficiaries. Appellant also notes that OCGA § 14-11-506 provides that the executor of a deceased sole member of a limited liability company "shall become a member of the limited liability company."

Under these statutes and will provisions, Appellant, as executor, took Decedent's place as the sole member of Buckshot, and he had all the powers

[2] The chapter of the Georgia Code relating to wills and trusts was repealed and replaced in 2010. See Ga. L. 2010, p. 579, § 1. The language previously found in OCGA § 53-12-232 (5) can now be found in OCGA § 53-12-261 (b) (3).

6

associated with that position. The problem for Appellant is that under the unequivocal terms of Buckshot's operating agreement, the only things he could do in that position involved dissolving the company. See OCGA § 14-11-305 (4) (A) (explaining that the duties of an LLC's member may be restricted by provisions in a written operating agreement). The operating agreement names Decedent as "the Member" of Buckshot, and it provides that "the death, withdrawal, removal, bankruptcy, insolvency or incompetency of the Member" dissolves the company. The duties of the successor member are clearly expressed and strictly limited: "Upon the occurrence of any of the terminating events . . . , the Company shall be dissolved, the Member shall convert the Company's assets into cash, and all such cash shall be applied and distributed in the following order of priority . . . [by which assets remaining after paying debts go to the Member]."

The record shows that as of the date of the hearing, which was nearly 18 months after Appellant became the estate's executor and Buckshot's successor member, he had yet to follow this mandate of the operating agreement by taking steps to effectuate the dissolution of the company. Instead, Appellant withdrew $43,339.21 from the estate to continue operating Buckshot, including

7

$27,856.61 used to pay for a new fence and other improvements to Buckshot's rental property and a $5,000 capital contribution to Buckshot. The trial court as factfinder was authorized to conclude that, by failing to follow the operating agreement and instead expending estate funds on an asset of the estate that should be dissolved and liquidated, Appellant caused "unnecessary delay and expense to the [e]state." In re Estate of Arnsdorff, 273 Ga. App. 612, 615 (615 SE2d 758) (2005). See also OCGA § 53-7-1 (a) (explaining that an executor "is under a general duty to settle the estate as expeditiously and with as little sacrifice of value as is reasonable under all of the circumstances").

Moreover, although Appellant argues that disregarding Buckshot's operating agreement and spending estate funds on the company helped the estate by improving the value of the business, his decisions regarding Buckshot were tainted by an impermissible conflict of interest. While the estate was losing money because of Buckshot, Appellant was personally benefitting from the continued operation of the business by using Buckshot property rent-free and using Buckshot funds to pay his personal bills. See Ringer v. Lockhart, 240 Ga. 82, 85 (239 SE2d 349) (1977) ("'An administrator or executor is a trustee invested with a solemn trust to manage the estate under his control to the best

8

advantage of those interested in it. . . . Nothing can be tolerated which comes into conflict or competition with the interests and welfare of those interested in the estate.'" (citation omitted)).  See also Ray v. Nat. Health Investors, Inc., 280 Ga. App. 44, 51 (633 SE2d 388) (2006) (explaining that the broad grant of powers to continue to participate in and operate a decedent's enterprises under former OCGA § 53-12-232 do not excuse the executor from his fiduciary duty).

For these reasons, the expenditures Appellant made from the estate to Buckshot were improper, and the trial court did not err in requiring Appellant to repay to the estate the funds he paid to Buckshot and in requiring the new executor to begin winding up the company.

(b)    Appellant also contends that he was entitled to a commission on the money paid to or spent on behalf of Buckshot.  Under OCGA § 53-6-60 (b) (1), if an executor's compensation is not specified in the will, he is entitled to a "2 1/2 percent commission on all sums paid out by the personal representative, either for debts, legacies, or distributive shares."  The probate court correctly concluded, however, that the money Appellant paid out to or for Buckshot was not properly paid for "debts, legacies, or distributive shares" of the estate, and so the court did not err in ordering Appellant to repay commissions he took on

9

those transactions. See Greenway v. Hamilton, 280 Ga. 652, 655-656 (631 SE2d 689) (2006) (affirming the probate court's order to the executor to forfeit his commissions because "the probate court has the power to require [an executor] to forfeit commissions and fees for breaching his fiduciary duties").

3. Appellant next argues that despite his numerous breaches of fiduciary duty (several of which are undisputed on appeal), he should not have been removed as executor. He points to OCGA § 53-7-55, which says in relevant part:

> Upon the petition of any person having an interest in the estate or whenever it appears to the probate court that good cause may exist to revoke the letters of a personal representative or impose other sanctions, the court shall cite the personal representative to answer to the charge. Upon investigation, the court may, in the court's discretion: (1) Revoke the personal representative's letters . . . .

See In re Estate of Zeigler, 259 Ga. App. 807, 809 (578 SE2d 519) (2003) (explaining that OCGA § 53-7-55 requires that "the executor be given notice of the charge and opportunity to answer"). Appellant claims that because Appellee specifically withdrew his petition to remove Appellant as executor, Appellant did not have notice of the charge against him and was not aware that the hearing might lead to his removal.

10

However, although Appellee withdrew the formal request to remove Appellant as executor made in his original petition, he made it clear that he did so to avoid Appellant's invocation of the will's in terrorem clause. The substance of Appellee's complaint remained unchanged; in his amended petition, he again asserted, with the same detailed allegations, that Appellant "is mismanaging and wasting Estate assets, is engaged in breaches of his fiduciary duty[,] and may have direct conflicts of interest with the Estate." These charges, if proved, clearly would be grounds for the court to remove Appellant as executor. At the hearing, which was described in the court's amended scheduling order as a hearing on "Petitions to Cite Executor, Motion to Remove Executor, and Motion to Remove Devisee or Legatee," the testimony focused on these allegations of executor misconduct. And in closing argument, Appellee's attorney reminded the court that it had the power to remove Appellant as executor, saying that although Appellee had withdrawn his removal request, the court still had "the authority to take action."

Appellant did not challenge the propriety of this suggestion, nor did he dispute the court's authority to sua sponte remove Appellant as a result of the hearing evidence. To the contrary, Appellant's attorney responded to the

11

removal issue directly, beginning his closing argument by saying:

> There's not any evidence whatsoever presented . . . in this case that shows any wrongdoing by my client at all, period. [Appellee] can tiptoe around it all he wants. They are asking you to remove [Appellant] as executor. There's no question about it.

Appellant's attorney then argued that Appellant had not committed any wrongdoing; at no time did he argue that the court could not remove Appellant because he lacked adequate notice of this possibility. Appellant's attorney concluded his argument by saying, "at the end of the day there's absolutely no reason, number one, to remove [Appellant]."

Appellant relies on Zeigler, where the Court of Appeals reversed the removal of an executor because the petition being decided at the hearing alleged only that the executor had not answered inquiries about the estate, and "[t]here was no petition made to remove [the] executor, nor any indication that she might be removed as executor." 259 Ga. App. at 809. In this case, by contrast, Appellant was aware that Appellee wanted him removed and in fact repeatedly argued that his potential removal was exactly what the hearing was about. Appellant treated the hearing as his opportunity to answer the charges against him that could result in his removal. He has not asserted that there is any

12

different or additional evidence he would have offered or argument he would have made if the court had more explicitly directed him to answer why he should not be removed. The court's removal of Appellant as executor was the predictable consequence of its findings as to Appellee's charges. This enumeration of error therefore fails.

4.    Finally, Appellant contends that even if the probate court did not err in removing him as executor, it erred in appointing a county administrator as his successor instead of Appellee, because in the will Decedent

> appoint[ed] the following to be my Personal Representative(s) in the order of priority in which their names appear: (1) JAMES THOMAS MYERS, JR. [Appellant] (2) ANTHONY LEE MYERS [Appellee]. If, for any reason, any Personal Representative(s) named above is unable or unwilling to serve, the next Successor Personal Representative(s) shall serve in the order of priority listed until the list has been exhausted.

Although once the court removed Appellant as the executor, the court may have erred in not addressing the issue of Appellee being named in the will as the successor executor, any such error is harmless. See OCGA § 9-11-61.[3]

---

[3] OCGA § 9-11-61 provides:
No error . . . in any ruling or order or in anything done or omitted by the court . . . is ground for granting a new trial or for setting aside a verdict or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every

13

Appellee has unequivocally represented to this Court, both in his brief and at oral argument, that he will refuse to serve as executor. Thus, if we were to remand the case for the probate court to appoint Appellee as the executor, it is clear that Appellee would refuse, and then the court would be required to appoint a county administrator to serve as the executor, just as it has already done. See OCGA § 53-6-35 (a) ("The probate court of each county shall appoint a county administrator whose duty shall be to take charge of all estates unrepresented and not likely to be represented."). We will not prolong this contentious family dispute simply to require the probate court to perform a futile act and arrive at the same outcome.

Judgment affirmed. All the Justices concur.

---

stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.

Decided July 6, 2015.

Wills. Henry Probate Court. Before Judge Powell.

Hodges, McEachern & King, Timothy K. King, for appellant.
Stephen H. DeBaun; Gregory A. Futch, for appellee.