303 Ga. 211
FINAL COPY

S17A1488. PETERSON et al. v. PETERSON et al.

HINES, Chief Justice.

In consolidated actions in superior court, appellants Alex and David Peterson, who are brothers, claimed, among other things, that their mother, appellee Mary Peterson, and their brother, appellee Calhoun Peterson, had breached their duties as executors of the will of Mary's husband, Charles Hugh Peterson, and as trustees of a bypass trust created by that will.[1] This appeal stems from the superior court's grant of a motion for summary judgment filed by Mary.[2] For the reasons that follow, we reverse the judgment of the superior

---

[1] Alex's action originated in probate court. That court removed Mary and Calhoun as executors, among other things, and, pursuant to Mary's appeal, Alex's action was in superior court for a de novo review. David's action originated in superior court. The superior court consolidated the two actions.

[2] Calhoun did not join Mary's motion. Because the notice of appeal was filed before January 1, 2017, this Court has appellate jurisdiction in this will case. See Ga. Const. of 1983, Art. VI, Sec. VI, Par. III (3); OCGA § 15-3-3.1 (a) (3); Ga. L. 2016, p. 883, § 6-1 (c). After the grant of Mary's motion, the remaining parties introduced more evidence, and Calhoun moved for summary judgment. In February 2017, the superior court granted Calhoun's motion. Because the notice of appeal from that order was filed after January 1, 2017, the Court of Appeals has appellate jurisdiction in that case. We note that Calhoun is properly a party to this appeal. See OCGA § 5-6-37 ("All

court.

Charles Hugh Peterson died testate in 1994.  Item 5 of his will created a marital trust for Mary, while Item 6 created a bypass trust for Mary and their three sons.  Mary and her three sons were all named as co-executors and co-trustees of the will and trusts.  While all four were first appointed co-executors, David later resigned as an executor.  Other than some specific personal property, all the real and personal property of the estate was to be placed in either the marital trust or the bypass trust, and the bypass trust was designed to have a value of $600,000.  The estate consisted largely of stock in various private companies, including Montgomery County Bank and Vidalia Naval Store (VNS) (also referred to as Vidalia Gum Turpentine), as well as substantial real estate holdings.  Also, at the time of his death, the testator owned several financially distressed family companies, including Metter Manufacturing Company, Embassy Enterprises, Inc., and Firecracker, Inc.  The Montgomery County Bank and VNS stock were assigned to the bypass trust, and had values of $106,000 and $208,000, respectively, in 1998.  The 16,000 shares of VNS stock had a value of $13 per share in 1998 and sold for $122 per share in May 2015.

parties to the proceedings in the lower court shall be parties on appeal.").

2

Item 5 of the will provides that all of the income from the marital trust goes to Mary for her life and that Mary has "the power at any time and from time to time . . . to direct the Trustees to turn over any part of the property in this trust to my said wife or to or among such of my descendants or spouses of such descendants." At Mary's death, in the event that she has not disposed of the trust property in her will or by her power of appointment, it will become part of the bypass trust if it is still in existence. If it is not, the property is to be divided between Alex, David, and Calhoun or their descendants.

The bypass trust provides that Mary is entitled to the income from the bypass trust for life and that the trustees have discretion to encroach upon the principal of the trust "to provide for the support in reasonable comfort of my wife and to provide for the proper support and education of my descendants taking into account and consideration any other means of support they or any of them may have to the knowledge of the Trustees." The bypass trust also provides that, after any descendant has completed his education, the trustees "shall not be required to make any payment for the support of such descendant" unless the trustees think there is "ample property to support my wife and educate my descendants or unless such descendant is unable to support himself." The

bypass trust further says that the testator's "primary desire is that my wife be supported in reasonable comfort during her lifetime and that my children be supported in reasonable comfort during their lives; my secondary desire is that the principal of this trust be preserved as well as possible consonant with the consummation of my primary objective." Under this trust, Mary may direct the trustees to turn over any trust property to any descendant of her choice, but may not appoint the property to herself. At Mary's death, in the event that she has not disposed of the trust property by her power of appointment, it is to be divided between Alex, David, and Calhoun or their descendants.

Finally, Item 21 (a) of the will provides that "[i]n all matters relating to my estate or to any trust, the decision of a majority of the Executors or Trustees then acting shall control, provided such majority shall include my wife is [sic] she is then acting."

In their complaints, Alex and David alleged that Mary and Calhoun have made all the decisions under the will and trusts without consulting them and that Alex and David had communicated their objections regarding the handling of the trusts to Mary and Calhoun. Alex and David also alleged that Mary and Calhoun had breached their fiduciary duties as executors and trustees by not

4

properly funding the bypass trust, by converting estate assets for their own benefit, by wasting estate assets by using them to continue the operations of several financially distressed businesses owned by the testator at his death, by improperly encroaching upon the principal of the bypass trust for Mary's benefit, and by disregarding one of the testator's primary desires, with regard to the bypass trust, that "my children be supported in reasonable comfort during their lives." Alex and David sought support from the bypass trust, an accounting, the appointment of a receiver, the removal of Mary and Calhoun as executors and trustees, and the appointment of one of them or an independent party as sole executor and trustee.

In May 2016, Mary moved for summary judgment on all these claims. In November 2016, the superior court granted summary judgment to Mary, and Alex and David have appealed that ruling.

1. "To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. OCGA § 9-11-56 (c)." *Hardin v. Hardin*, 301 Ga. 532, 536 (801 SE2d 774) (2017) (citation and punctuation omitted). "A

5

defendant may do this by either presenting evidence negating an essential element of the plaintiff's claims or establishing from the record an absence of evidence to support such claims." *Cowart v. Widener*, 287 Ga. 622, 623 (697 SE2d 779) (2010) (citation and punctuation omitted). Here, Mary, as the defendant, did not put in any evidence, and she did not attempt to point to the absence of evidence in the record to support Alex's and David's claims. Instead, in a brief one-and-a-half page motion, she argued that the will was a "law unto itself," *Bratton v. Trust Co. of Ga.*, 191 Ga. 49, 56 (11 SE2d 204) (1940), and granted her the power to do all the acts supporting Alex's and David's claims. The trial court agreed and granted her motion.

2. Of the many allegations of the complaints, the superior court specifically addressed two of them. One was Alex's and David's allegation that Mary and Calhoun, as trustees, had not properly considered the testator's stated intention "to provide for the proper support and education of my descendants taking into account and consideration any other means of support they or any of them may have to the knowledge of the Trustees." With regard to this issue, the superior court ruled against Alex and David for two reasons.

First, the court concluded that, because Item 21 of the will provided that

6

a decision of the majority of the trustees would be controlling only so long as Mary was one of the majority, Alex and David would be entitled to income under the bypass trust only if Mary approved it.[3]  Second, the court concluded that, because of the requirement that Mary be a part of the majority of executors or trustees for one of their decisions to control, because of the benefits granted to Mary under the trusts, and because of her power to appoint trust property, the primary purpose of the trusts was to support Mary, and there was thus "no requirement that income be provided to either [Alex or David]."  These conclusions of the superior court, however, did not warrant the grant of summary judgment to Mary.

To begin, we note that "the cardinal rule in trust law is that the intention of the settlor is to be followed." *Rollins v. Rollins*, 294 Ga. 711, 714 (755 SE2d 727) (2014).  Moreover,

> [a] trustee has a duty to administer a trust in accordance with its terms and purposes.  OCGA § 53-12-241; see also Restatement (Third) of Trusts § 76 (2007) ("The trustee has a duty to administer

---

[3] The superior court also found as a matter of fact that David had resigned as a trustee in 1996, leaving only three trustees to administer the trusts.  However, as Mary conceded in the superior court, there is no evidence that David resigned as a trustee.  To the extent the superior court concluded that, due to David's resignation, the acts of Mary and Calhoun in administering the trust were acts of a majority of the trustees, this conclusion was in error.

7

the trust, diligently and in good faith, in accordance with the terms of the trust and applicable law."); Restatement (Third) of Trusts § 76, comment (c) (2007) ("A fundamental duty of the trustee is to carry out the directions of the testator or settlor as expressed in the terms of the trust"), quoting George Gleason Bogert, George Taylor Bogert & Amy Morris Hess, The Law of Trusts and Trustees § 541.

*Hasty v. Castleberry*, 293 Ga. 727, 733 (749 SE2d 676) (2013).

Here, the testator clearly stated his intention that a primary purpose of the bypass trust was to support his children "in reasonable comfort during their lives." In this vein, the terms of the trust give the trustees the discretion to encroach upon the principal of the bypass trust "to provide for the proper support and education of my descendants taking into account and consideration any other means of support they or any of them may have to the knowledge of the Trustees." However, the trust adds that, if a descendant has completed his education, the trustees are not required to support the descendant unless the trustees conclude that there is "ample property to support my wife and educate my descendants or unless such descendant is unable to support himself."

Contrary to the superior court's reasoning, the mere fact that Mary must be a part of a majority of the trustees for a decision regarding the trust to be controlling says nothing about whether she and the other trustees diligently and

8

in good faith investigated whether the conditions precedent for the discretionary payment of support to Alex and David have been satisfied. Under the terms of the trust, that investigation would involve, among other things, an evaluation of the financial health of trust property and Alex's and David's ability to support themselves. Similarly, in saying that there is no "*requirement*" that support be provided to Alex and David, the superior court erred. Alex and David do not contend that there is a trust "*requirement*" that they be supported, but only that the trustees follow the terms of the trust and consider whether they should be given support. Furthermore, the settlor clearly stated that he had two primary purposes in creating the bypass trust: to support Mary "in reasonable comfort during her lifetime" and to support his children "in reasonable comfort during their lives." The court's conclusion that *the primary* purpose of the bypass trust was to support Mary is therefore clearly erroneous. Finally, that one of the primary purposes of the bypass trust was to support Mary is not incompatible with and does not permit the trustees to ignore the other primary purpose of that trust — the support of descendants if, in the discretion of the trustees, doing so is in accordance with the terms and purposes of the trust.

    3.   The other allegation of the complaint that the superior court

9

specifically addressed is that Mary and Calhoun, as executors and trustees, have committed waste in a number of ways, including by using and collateralizing estate assets to fund the financially distressed family companies.

On this issue, the superior court noted that Mary could direct the trustees to turn over the property of the marital trust to her and to turn over the property of the bypass trust to a descendant of her choosing. The court then ruled against all the claims of waste on the ground that "it appears that there is nothing in the will that would prevent Mary Peterson from simply turning over all of the property in the two trusts to herself and co-defendant, . . . Calhoun Peterson, and they could then use or waste the property as they saw fit." Under the will, however, Mary must exercise this power of appointment "by instrument in writing signed by her and delivered to the trustees . . . , making express reference to this power." There is no evidence in the record that Mary has ever executed such an instrument. Indeed, the superior court does not say that Mary has done so, but merely that "there is nothing in the will" that would "prevent" her from making such a request. Mary's mere right as a beneficiary to direct that property be turned over to her or a descendant by a written instrument given to the trustees does not diminish her duty as an executor and trustee not to waste

10

property of the estate or trusts while that property, as the record currently shows, remains a part of the estate or trust.[4] See *Myers v. Myers*, 297 Ga. 490, 494 (775 SE2d 145) (2015) ("An administrator or executor is a trustee invested with a solemn trust to manage the estate under his control to the best advantage of those interested in it. . . . Nothing can be tolerated which comes into conflict or competition with the interests and welfare of those interested in the estate." (citation and punctuation omitted)); OCGA § 53-7-1 (a) (saying that an executor "is under a general duty to settle the estate as expeditiously and with as little sacrifice of value as is reasonable under all of the circumstances"); *Hasty*, 293 Ga. at 733 ("The trustee has a duty to administer the trust, diligently and in good faith, in accordance with the terms of the trust and applicable law." (citation and punctuation omitted)); id. at 735 ("'[A] trustee shall administer the trust solely in the interests of the beneficiaries.'" (quoting OCGA § 53-12-246 (a))). For these reasons, the trial court erred in granting summary judgment on the claims of waste on this ground.

As to the claim that Mary and Calhoun committed waste by the continued

___

[4] See The Law of Trusts and Trustees, supra, § 812 (explaining that a beneficiary may be granted the power to demand the payment of trust principal).

operation of decedent's failing businesses, the superior court ruled that summary judgment was appropriate because Item 12 (a) (9) of the will allowed the executors and trustees "to retain and carry on any business in which I may own an interest at the time of my death." However, contrary to this ruling, the fact that the executors and trustees had the discretionary power to operate the businesses did not relieve them of their fiduciary duties, including their duty not to commit waste. See *Myers*, 297 Ga. at 494 (explaining that the grant of power to continue operating a decedent's businesses under the terms of a will did not excuse an executor from the fiduciary duty to avoid a conflict of interest with those interested in the estate); *Rollins v. Rollins*, 338 Ga. App. 308, 313 (790 SE2d 157) (2016) (saying that "our law is clear that a trustee has a duty to exercise discretionary powers in good faith" (citing to OCGA §§ 53-12-7 (a) (4); 53-12-260)); Restatement (Third) of Trusts § 86, comment (b) (2007) ("All powers of trusteeship are held in the trustee's fiduciary capacity and must be exercised in good faith and to serve the interests of the beneficiaries."). Thus, here, Mary and Calhoun, as executors, were "invested with a solemn trust to manage the estate . . . to the best advantage of those interested in it," see *Myers*, 297 Ga. at 494 (citation and punctuation omitted), and "with as little sacrifice

12

of value as is reasonable under all of the circumstances," OCGA § 53-7-1 (a). In addition, as trustees, Mary and Calhoun had the duty to "exercise the degree of care and skill as a person of ordinary prudence would exercise in administering the trust." *Citizens & Southern Nat. Bank v. Haskins*, 254 Ga. 131, 134 (327 SE2d 192) (1985). Accord OCGA § 53-12-241 ("In administering a trust, the trustee shall exercise the judgment and care of a prudent person acting in a like capacity and familiar with such matters, considering the purposes, provisions, distribution requirements, and other circumstances of the trust.").

Accordingly, the proper issue for the superior court with regard to the claim that Mary and Calhoun committed waste in operating the businesses was not whether the will granted them the power to operate the businesses, but whether their operation of the businesses was in accordance with the foregoing standards. We therefore reverse the grant of summary judgment on this ground.

4. The superior court addressed the remaining claims of Alex and David in one sentence, saying that, based on its reasoning on the two claims that it addressed, it was granting summary judgment on the remaining claims. However, for the same reasons that we reverse the grant on the two claims addressed, we reverse the grant of summary judgment on the other claims.

Judgment reversed.  All the Justices concur.

Decided March 5, 2018.

Wills. Candler Superior Court. Before Judge Reeves.

<u>Mozley, Finlayson & Loggins, Joseph J. Burton, Jr.; Armstrong Nix, Rosemary S. Armstrong</u>, for appellants.

<u>Spivey, Carlton & Edenfield, J. Franklin Edenfield; R. Bruce Russell</u>, for appellees.