**FIRST DIVISION**
**BARNES, P. J.,**
**MCMILLIAN and REESE, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**October 9, 2018**

# In the Court of Appeals of Georgia

A18A1337. REGAL NISSAN, INC. v. SCOTT

McMILLIAN, Judge.

Regal Nissan, Inc. ("Regal") appeals from the trial court's order granting Stacey Scott[1] the right to inspect its corporate books under OCGA § 14-2-1602 and denying its motions to compel and stay pending arbitration. We affirm for the reasons set out below.

On January 7, 2016, Andrew Reid Scott and other Regal shareholders entered into an agreement entitled "Amended and Restated Agreement Affecting Shares of Regal Nissan, Inc." ("Shareholder Agreement"), which provided, among other things, that the corporation, or if it fails to do so, the other shareholders, had the option to purchase the shares of a shareholder upon the appointment of a receiver, trustee, or other personal representative for all or the portion of the property of the shareholder

---

[1] To avoid confusion, we will refer to Stacey and Andrew Reid Scott by their first names.

that includes the shares.[2] To facilitate the exercise of this option, the agreement provided a method for determining the "fair market value" of the shares at the pertinent time. The Shareholder Agreement also contained an arbitration clause and provided that it "shall be binding upon and inure to the benefit of the successors, assigns, personal Representatives, heirs and legatees of the respective parties hereto."

Andrew subsequently passed away, and after his death, the probate court named Stacey, who was Andrew's wife, as the administrator of his estate (the "Estate"), granting her all of the powers of a trustee under OCGA § 53-12-261 with regard to the estate as of April 11, 2017. At the time of Andrew's death, he owned seven shares of Regal Class A stock and 343 shares of Class B stock. On April 17, 2017, Stacey's attorney sent Regal a written request to inspect Regal's corporate records under OCGA § 14-2-1602. In response, Regal sent Stacey a written notice dated April 24, 2017 asserting that it was exercising its right under the Shareholder Agreement to call and purchase all shares of stock held by the Estate. On June 27, 2017, Stacey sent a second request to see the corporate records, to which Regal

---

[2] Although the Shareholder Agreement recites that it is made by and between Regal and its shareholders, the copies of the agreement in the record do not reflect that Regal ever signed the agreement.

responded that Stacey was not a shareholder and would not be allowed to access the records.[3]

Shortly thereafter, Stacey filed a "Petition for Inspection of Corporate Records" under OCGA §§ 14-2-1602 and 14-2-1604. Regal filed no answer to this petition, but instead responded with a motion to compel arbitration under the Shareholder Agreement and a separate motion to stay the matter pending arbitration. Following a hearing on the motions, the trial judge issued an order finding that Stacey was a shareholder, that she could inspect the corporate records of Regal under OCGA § 14-2-1602, and that her statutory right to inspect the corporate records was not superceded by the arbitration clause contained in the Shareholder Agreement.

1. Before addressing the merits of Stacey's petition, we turn first to Regal's argument that the trial court erred in denying its arbitration motions. The standard of review from the denial of these arbitration motions "is whether the trial court was correct as a matter of law[,]" and we apply a de novo review to the trial court's determination. (Citation and punctuation omitted.) *Waffle House, Inc. v. Pavesi*, 343 Ga. App. 102, 102 (806 SE2d 204) (2017).

---

[3] Despite the fact that Regal took the position that Stacey was never a Regal shareholder, it nevertheless sent her written notice on July 3, 2017, stating that she was in violation of the Shareholder Agreement.

The arbitration clause in the Shareholder Agreement provides that "[i]f a dispute arises in connection with this Agreement, such dispute shall be resolved by arbitration pursuant to the rules" of a designated private arbitration service. Thus, the question presented is whether the petition is a dispute that arises in connection with the Shareholder Agreement. We agree with the trial court that it is not.

The only issue raised by Stacey's petition is whether she had the right under OCGA §§ 16-1-1602 and 1604 to inspect Regal's corporate records. The right at issue, therefore, is based in statute and not on any rights or obligations set out in the Shareholder Agreement, which, in fact, is silent on the inspection issue.[4] Therefore, because the issue presented by Stacey's petition is completely independent from, and may be resolved without regard to, the Shareholder Agreement, this case is governed by our Supreme Court's decision in *Ga. Rehabilitation Center, Inc. v. Newnan Hosp.*,

---

[4] Pretermitting whether a shareholder could contract away or limit his statutory right of inspection, we note that this right "may not be abolished or limited by a corporation's articles of incorporation or bylaws[]" for any shareholders that own more than two percent of the company's shares. See OCGA § 14-2-1602 (e). Cf. *Mannato v. SunTrust Banks, Inc.*, 308 Ga. App. 691, 693 (708 SE2d 611) (2011) (OCGA § 14-2-1602 "abrogates by necessary implication any common law right of inspection provided to shareholders owning two percent or less of a corporation's outstanding shares."). Regal conceded at the hearing in this case that Andrew's shares exceed this two-percent threshold.

4

283 Ga. 335, 335-36 (1) (658 SE2d 737) (2008). In that case, the Supreme Court considered a somewhat broader arbitration clause providing that "[a]ny dispute, controversy or claim arising out of or in connection with, or relating to," the parties' operating agreement be submitted to arbitration. That dispute involved a corporate dissolution commenced under a statute setting out an independent legal mechanism for dissolving a limited liability company and not under any of the grounds for dissolution set out in the operating agreement. The Supreme Court held that the dispute was not subject to arbitration because it did not arise out of or relate to the parties' agreement. Likewise, because the dispute in this case does not fall under the terms of the Shareholder Agreement, we affirm the trial court's denial of Regal's arbitration motions.

2. Regal also argues on appeal that the trial court erred in finding that Stacey has standing to inspect its corporate records under OCGA § 14-2-1602 because she does not qualify as a shareholder within the meaning of Georgia's business corporations code.

OCGA § 14-2-1602 provides that a shareholder is entitled to copy and inspect certain corporate records upon written demand, OCGA § 14-2-1602 (a) & (b), and certain additional records upon written demand and if certain other criteria are met.

5

OCGA § 14-2-1602 (c) & (d). OCGA § 14-2-140 (27) defines the term "shareholder" as used in that statute to mean "the person in whose name shares are registered in the records of a corporation or the beneficial owner of shares to the extent of the rights granted by a nominee certificate on file with a corporation." Subsection (g) of OCGA § 14-2-1602 further grants the right to inspect and copy the designated corporate records to "a beneficial owner whose shares are held in a voting trust or by a nominee on his behalf." Stacey does not assert that the Estate is a registered shareholder on Regal's corporate books or that it is named a beneficial shareholder by nominee certificate or under a voting trust.

However, Andrew is identified as a shareholder in Exhibit A to the Shareholder Agreement, and as the trial court found, Stacey assumed Andrew's interest in Regal by operation of law upon her appointment as the administrator and personal representative of the Estate. Under OCGA § 53-2-7 (b), "[t]he title to all [property other than real estate] owned by an intestate decedent shall vest in the administrator of the estate for the benefit of the decedent's heirs and creditors." See also OCGA § 53-8-5 (a). Additionally, under OCGA § 53-7-2 "[t]he personal representative shall

6

be entitled to possess and administer the entire estate[]"[5] and because Stacey holds all the powers of a trustee, under OCGA § 53-12-261 (b) (13) and (15), she has the power to "[t]o vote shares of stock or other ownership interests held by the fiduciary, in person or by proxy, with or without power of substitution[]" and "[t]o exercise all options, rights, and privileges to convert stock[.]"

The starting point in construing any statutory language is to view the text according to its plain and ordinary meaning in the context in which it appears. See *Schick v. Bd. of Regents of Univ. System of Ga.*, 334 Ga. App. 425, 431 (1) (779 SE2d 452) (2015). "And appellate courts must construe statutes to give sensible and intelligent effect to all of their provisions and to refrain from any interpretation which renders any part of the statutes meaningless." (Citations and punctuation omitted.) *Graham v. McKesson Information Solutions*, 279 Ga. App. 364, 366 (631 SE2d 424) (2006). Therefore, we must construe the statutes governing the transfer of stock ownership to a shareholder's estate together with the provisions governing the rights of a shareholder to inspect corporate books so as to give them "sensible and intelligent effect."

---

[5] The term "personal representative" in this context "means any administrator, administrator with the will annexed, county administrator, or executor." OCGA § 53-1-2 (12).

7

The statutes governing the transfer of stock to the Estate vest ownership of the Regal shares in Stacey, as the Estate's administrator, and the probate court's order granted her a trustee's powers over those shares. Therefore, in her capacity as administrator, Stacey took Andrew's place as a shareholder of Regal stock, with "all the powers associated with that position." *Myers v. Myers*, 297 Ga. 490, 493 (2) (a) (775 SE2d 145) (2015) (holding that executor took decedent's place as sole member of limited liability corporation with all associated powers).[6] And construing those estate administration and trustee statutes in conjunction with OCGA §§ 14-2-140 (27) and 14-2-1602, we agree with the trial court that Stacey's powers as administrator encompass the right to inspect Regal's corporate books even though the Estate itself is not listed on the corporation's records as a shareholder. See *Kelley Mfg. Co. v. Martin*, 296 Ga. App. 236, 239 (1) (674 SE2d 92) (2009) (holding that former employees of corporation had the right to inspect its corporate records as beneficial shareholders, even where they were not registered shareholders, were not designated

---

[6] Although the Supreme Court applied former OCGA § 53-12-232 in deciding *Myers*, 297 Ga. at 492 (2) (a), the Court noted the similarity in language in that statute and the current statute outlining the powers of a trustee. 297 Ga. at 492 (2) (a) n.2; OCGA § 53-12-261. And, in fact, the language found in former OCGA § 53-12-232 (14) and (16) is identical to the language found in current OCGA § 53-12-261 (b) (13) and (15).

as beneficial shareholders as of record, and no nominee or voting trust was on file, because the retirement plan, of which they were shareholders, was itself registered on the corporate books as a shareholder). See also *G. S. & M. Co. v. Dixon*, 220 Ga. 329, 330 (138 SE2d 662) (1964) (holding that administrator of estate had common law right to inspect corporate records and books).[7] Accordingly, we affirm the trial court's finding that Stacey was a Regal shareholder entitled to inspect corporate records under OCGA § 14-2-1602.

3. Regal next argues that the trial court erred in finding that Stacey had complied with the requirements in OCGA § 14-2-1602 for the inspection of corporate records. The corporation argues that Stacey's request for inspection was not made in good faith and that she failed to specify with reasonable particularity how the requested records are relevant to her purpose.

In its written order, the trial court directed that "[t]his inspection shall include all the records sought by [Stacey] which are listed in OCGA § 14-2-1602 (a)."

---

[7] Additionally, we are unpersuaded to the extent that Regal argues that Stacey is not a shareholder because the corporation exercised its option to call Andrew's stock because the record contains no evidence of a closing on the repurchase of the stock.

9

Subsection (a) lists eight categories of documents that a corporation is required to maintain,[8] and subsection (b) of the statute provides:

---

[8] Those documents are as follows:

(1) Its articles or restated articles of incorporation and all amendments to them currently in effect;

(2) Its bylaws or restated bylaws and all amendments to them currently in effect;

(3) Resolutions adopted by either its shareholders or board of directors increasing or decreasing the number of directors, the classification of directors, if any, and the names and residence addresses of all members of the board of directors;

(4) Resolutions adopted by its board of directors creating one or more classes or series of shares, and fixing their relative rights, preferences, and limitations, if shares issued pursuant to those resolutions are outstanding and any resolutions adopted by the board of directors that affect the size of the board of directors;

(5) The minutes of all shareholders' meetings, executed waivers of notice of meetings, and executed consents, delivered in writing or by electronic transmission, evidencing all action taken by shareholders without a meeting, for the past three years;

A shareholder of a corporation is entitled to inspect and copy, during regular business hours at the corporation's principal office, any of the records of the corporation described in subsection (a) of this Code section if he gives the corporation written notice of his demand at least five business days before the date on which he wishes to inspect and copy.

OCGA § 14-2-1602. Therefore, as a shareholder, Stacey is entitled to inspect and copy the records listed in OCGA § 14-2-1602 (a) upon written demand made at least five days before the requested inspection date, without any additional requirements. Stacey made her first written request to inspect Regal's corporate records by letter dated April 17, 2017, requesting an inspection at the corporate office to take place

---

(6) All communications in writing or by electronic transmission to shareholders generally within the past three years, including the financial statements furnished for the past three years under Code Section 14-2-1620;

(7) A list of the names and business addresses of its current directors and officers; and

(8) Its most recent annual registration delivered to the Secretary of State under Code Section 14-2-1622.

OCGA § 14-2-1602 (a).

nine days later during business hours. Stacey sent a second written demand on June 27, 2017, again requesting an inspection date nine days later. Therefore, Stacey's demands met the requirements for the production of documents under OCGA § 14-2-1602 (b), and we affirm the trial court's order directing Regal to make the records listed in OCGA § 14-2-1602 (a) available for Stacey's inspection.

We note, however, that the parties presented argument both in the trial court below and on appeal regarding the requirements for production of documents under OCGA § 14-2-1602 (c), which sets out three additional categories of documents[9] that

_____

[9] The documents listed in subsection (c) of OCGA § 14-2-1602 are as follows:

(1) Excerpts from minutes of any meeting of the board of directors, records of any action of a committee of the board of directors while acting in place of the board of directors on behalf of the corporation, minutes of any meeting of the shareholders, and records of action taken by the shareholders or board of directors without a meeting, to the extent not subject to inspection under subsection (a) of this Code section;

(2) Accounting records of the corporation; and

(3) The record of shareholders.

12

a shareholder is entitled to inspect if the shareholder provides timely demand *and*

meets the requirements for the production of those documents as set out in OCGA §

14-2-16-2 (d).[10] Although the trial court considered those arguments and determined

that Stacey met the subsection (d) requirements, it did not order Regal to produce any

of the subsection (c) documents. Rather, the order limits Stacey's inspection to the

documents listed in subsection (a) of the statute, specifically listing the eight

---

[10] Under OCGA § 14-2-1602 (d),

> A shareholder may inspect and copy the records described
> in subsection (c) of this Code section only if:
>
> (1) His demand is made in good faith and for a proper
> purpose that is reasonably relevant to his legitimate interest
> as a shareholder;
>
> (2) He describes with reasonable particularity his purpose
> and the records he desires to inspect;
>
> (3) The records are directly connected with his purpose;
> and
>
> (4) The records are to be used only for the stated purpose.

categories of documents referenced in that provision, and we have affirmed that ruling based on Stacey's written request to inspect those documents in accordance with subsection (b). Stacey did not cross-appeal the trial court's order nor did she raise the trial court's failure to order the inspection of the subsection (c) documents in her appellate briefs. Therefore, the issue of the inspection of documents under OCGA § 14-2-1602 (c) is not before us, and we need not address the parties' appellate arguments regarding the requirements under OCGA § 14-2-1602 (d) for the production of such documents.

*Judgment affirmed. Barnes, P. J., and Reese, J., concur.*