ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL III

| | | |
|---|---|---|
| DEBBIE ALONSO RODRÍGUEZ, en su capacidad de Albacea de la Sucn. Iris Rodríguez Rosa<br><br>Apelante<br><br>v.<br><br>SUPERMERCADO MR. SPECIAL, INC., S.A. PROPERTIES, INC., MARIOLA, INC., MAYAGÜEZ TOURIST DEVELOPMENT, S.E., S.A. INVESTMENTS, LLC., EDWIN ALONSO RODRÍGUEZ<br><br>Apelados | KLAN202400200<br><br><br><br>consolidado con | Recurso de *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Mayagüez<br><br>Caso Núm. MZ2023CV01775<br><br>Sobre: Injunction Estatutario Bajo el Artículo 7.10 de la Ley General de Corporaciones de Puerto Rico |
| EDWIN ALONSO RODRÍGUEZ, en su capacidad de Albacea de la Sucn. Santos Alonso Maldonado<br><br>Apelante<br><br>v.<br><br>MAYAGÜEZ RESORT & CASINO, INC.<br><br>Apelados | KLAN202400201 | Recurso de *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Mayagüez<br><br>Caso Núm. MZ2023CV01723<br><br>Sobre: Injunction Estatutario Bajo el Artículo 7.10 de la Ley General de Corporaciones de Puerto Rico |

Panel integrado por su presidente, el Juez Figueroa Cabán, el Juez Bonilla Ortiz, la Jueza Mateu Meléndez y la Jueza Prats Palerm.

*Prats Palerm, Jueza Ponente*

**SENTENCIA**

En San Juan, Puerto Rico, a 27 de junio de 2024.

Comparecen Debbie Alonso Rodríguez, en su capacidad de Albacea de la Sucesión Iris Rodríguez Rosa ("señora Debbie Alonso"), y Edwin Alonso Rodríguez, en su capacidad de Albacea de la Sucesión Santos Alonso Maldonado ("señor Edwin Alonso") (en

conjunto, "Apelantes"), mediante los recursos de apelación KLAN202400200 y KLAN202400201 y solicitan la revisión de la *Sentencia* notificada el 11 de enero de 2024, por el Tribunal de Primera Instancia, Sala de Mayagüez ("TPI"). Mediante el referido dictamen, el TPI desestimó las demandas de *Injunction* Estatutario presentadas por los apelantes, respectivamente. El foro apelado determinó que los albaceas testamentarios carecen de legitimación activa para solicitar la inspección de los libros de las corporaciones en las cuales los causantes, en vida, fueron accionistas.

Por los fundamentos que expondremos a continuación, se *Modifica* la *Sentencia* apelada para *Revocar* en parte y *Confirmar* en parte.

## I.

Conforme surge del expediente ante nuestra consideración, Doña Iris Rodríguez Rosa ("Doña Iris") y Don Santos Alonso Maldonado ("Don Santos"), casados entre sí bajo el régimen económico de Sociedad Legal de Gananciales ("SLG"), procrearon cuatro hijos en común, a saber: Richard, Edwin, Debbie e Iris Vanessa, todos de apellido Alonso Rodríguez. De una relación previa, Don Santos procreó a Santos Alonso Cintrón.

Durante la vigencia del matrimonio, Don Santos se dedicó a desarrollar varios negocios, principalmente en el área de supermercados, bienes raíces y hoteleras. Para cada negocio creó las siguientes empresas:

1) Supermercados Mr. Special ("SMS");
2) S.A. Properties, Inc. ("S.A. Properties");
3) Mariola Inc. ("Mariola");
4) Mayagüez Resort & Casino, Inc., ("MRC")
5) Mayagüez Tourist Development, S.E. ("MTD"), y
6) S.A. Investment, Inc. ("S.A. Investment").

El 13 de enero de 2023, Doña Iris falleció. Posteriormente, el 31 de enero de 2023, murió Don Santos. Mediante Testamento Abierto, Doña Iris nombró como albacea a su esposo y, en sustitución, a su hija, la señora Debbie Alonso. Al morir Don Santos,

sin haber asumido el cargo, la señora Debbie Alonso Rodríguez asumió el cargo de albacea de la Sucn. Iris Rodríguez Rosa. En cambio, Don Santos nombró como albacea a su hijo, el señor Edwin Alonso Rodríguez. Además, Don Santos dispuso que su hija, la señora Debbie Alonso, continuaría administrando el MRC.

El 29 de septiembre de 2023, el señor Edwin Alonso, como albacea de la Sucn. Santos Alonso Maldonado, presentó ante el TPI una demanda sobre *Injunction* Estatutario, Caso Civil Núm. MZ2023CV01723, en contra de MRC, al amparo del Art. 7.10 de la Ley General de Corporaciones[1] y solicitó autorización para inspeccionar los libros corporativos de MRC. En síntesis, sostuvo que, el 19 de septiembre de 2023, el señor Edwin Alonso, en calidad de albacea de la Sucn. Alonso Maldonado, le notificó a la señora Debbie Alonso, Administradora de MRC, una petición jurada de información, conforme dispone el Art. 7.10 de la Ley General de Corporaciones, *supra.* El señor Edwin Alonso alegó que, el 26 de septiembre de 2023, la petición fue condicionada a la entrega de información solicitada por la señora Debbie Alonso, en calidad de albacea de la Sucn. Rodríguez Rosa, de otras empresas que en vida le pertenecieron a Don Santos.

Por su parte, el 12 de octubre de 2023, la señora Debbie Alonso, en su capacidad de albacea de la Sucn. Rodríguez Rosa, presentó ante el TPI una demanda sobre *Injunction* Estatutario, Caso Civil Núm. MZ2023CV01775, al amparo del Art. 7.10 de la Ley General de Corporaciones, *supra*, en contra de las corporaciones, SMS, S.A. Properties, S.A. Investment, Mariola y MTD, y su hermano, el señor Edwin Alonso. Alegó que, desde el 19 de mayo de 2023, le solicitó al señor Edwin Alonso la entrega de la información financiera de las precipitadas empresas, a los efectos de conocer la verdadera condición económica de estas y cumplir con sus deberes

---

[1] 14 LPRA sec. 3650.

de fiducia. Sin embargo, adujo que, el señor Edwin Alonso, en distintas ocasiones, se negó a proveerle acceso a los libros de las corporaciones.

El 18 de octubre de 2023, ambos casos fueron consolidados mediante *Orden* en el Caso Civil Núm. MZ2023CV01723, por ser el de mayor antigüedad.

Luego de varios trámites procesales, que no son necesarios pormenorizar, el 19 de diciembre de 2023, el señor Edwin Alonso presentó una *Moción de Desestimación.* Arguyó que, Doña Iris no fue accionista o socia de las compañías y, por ende, la Sucn. Rodríguez Rosa carecía de legitimación activa para reclamar judicialmente el acceso a los libros corporativos. Entre la prueba documental presentada para sustentar sus argumentos, figuraban los certificados de acciones para las empresas, S.A. Properties, SMS y Mariola, todos a nombre de Don Santos.

El 8 de enero de 2024, la señora Debbie Alonso presentó su *Moción en Oposición a Desestimación.* Adujo que, las acciones de las compañías eran de carácter ganancial, toda vez que fueron adquiridas bajo la SLG compuesta por el matrimonio Alonso-Rodríguez. Por tanto, arguyó que, las acciones reclamadas por la Sucn. Alonso Maldonado le pertenecían al matrimonio Alonso-Rodríguez, en partes iguales. Así, pues, sostuvo que, como albacea de la Sucn. Rodríguez Rosa, tenía derecho a solicitar la inspección de los libros corporativos de las aludidas empresas.

El 11 de enero de 2024, el señor Edwin Alonso presentó una *Moción Informativa,* acompañada del certificado de acción expedido el 29 de diciembre de 1998 por MRC a nombre de Santos Alonso Maldonado por la cantidad de 500 acciones.

Ese mismo día, el TPI emitió una *Sentencia,* mediante la cual desestimó las causas de acción presentadas por las partes. El foro primario sostuvo que, únicamente los titulares de las acciones eran

acreedores del remedio interdictal conferido por el Art. 7.10. Por lo tanto, concluyó que los albaceas carecían de legitimación activa para solicitar la inspección a los libros corporativos de las empresas. Determinó, además, que los derechos propietarios que pudieron haber tenido en vida Doña Iris y Don Santos correspondía dilucidarlos en pleitos de índole sucesorio.

Inconforme, el 25 de enero de 2024, la señora Debbie Alonso presentó una *Moción de Reconsideración*. Asimismo, ese mismo día, el señor Edwin Alonso presentó una *Solicitud de Reconsideración Parcial*. Ambas solicitudes fueron declaradas No Ha Lugar mediante resoluciones notificadas el 31 de enero de 2024.

Insatisfechos aún, el 1 de marzo de 2024, la señora Debbie Alonso acudió ante esta Curia mediante *Apelación*, clasificada alfanuméricamente como KLAN202400200. La apelante realizó el siguiente señalamiento de error:

> **Erró el Honorable TPI al concluir que la demandante-apelante [señora Debbie Alonso], como Albacea Testamentaria de su madre quien era la dueña del 50% de las acciones de las entidades demandadas-apeladas, no tiene acceso a los remedios concedidos por la Ley General de Corporaciones, y, por consiguiente, al *Injunction* Estatutario del Art. 7.10(b) de la Ley General de Corporaciones.**

Por otra parte, ese mismo día, el señor Edwin Alonso presentó su recurso de *Apelación*, clasificado alfanuméricamente como KLAN202400201. El apelante realizó el siguiente señalamiento de error:

> **Erró el TPI al no reconocerle al Apelante [señor Edwin Alonso], en su capacidad de Albacea Testamentario de la Sucn. Santos Alonso Maldonado, legitimación para inspeccionar los libros del Mayagüez Resort & Casino, Inc., (entidad jurídica de la cual Don Santos Alonso Maldonado era, en vida, accionista), a pesar de que la ley reconoce expresamente que la petición para examinar los libros corporativos la puede presentar el accionista por sí o por apoderado u otro agente.**

El 5 de marzo de 2024, mediante *Resolución,* consolidamos ambos recursos por entender que versan sobre las mismas partes e impugnan el mismo dictamen.

El 15 de abril de 2024, las partes presentaron los correspondientes alegatos en oposición.

Perfeccionado el recurso y con el beneficio de la comparecencia de las partes, procedemos a resolver.

**II.**

**-A-**

La Ley Núm. 164 de 16 de diciembre de 2009, según enmendada, conocida como *Ley General de Corporaciones*[2] ("Ley General de Corporaciones"), fue aprobada con el fin de agilizar la gestión corporativa y simplificar los trámites contemplados en la misma.[3] Sabido es, que las corporaciones existen en virtud de una ficción jurídica instaurada a través de la Ley General de Corporaciones, la cual les faculta la realización o promoción de cualquier negocio o propósito lícito. Art. 1.01 (b).[4]

Atinente a la controversia ante nosotros, el Art. 5.11 de la Ley General de Corporaciones[5] establece que:

> Las **acciones de una corporación estarán representadas por certificados de acción**; disponiéndose, sin embargo, que la junta de directores de la corporación podrá determinar por resolución o resoluciones que algunas o todas de cualquiera o todas las clases o series de sus acciones, serán acciones sin certificado.

(Énfasis nuestro).

Como parte de los derechos reconocidos a los accionistas se encuentra el examen de los libros corporativos. El Art. 7.10 del referido estatuto, *supra,* regula lo relacionado al examen de los

---

[2] 14 LPRA sec. 3501 *et seq.*
[3] Véase, *Exposición de Motivos* de la Ley General de Corporaciones.
[4] 14 LPRA sec. 3501 (b).
[5] 14 LPRA sec. 3561,

libros corporativos. Para efectos del Art. 7.10, *supra*, la Ley precipita que:

> "Accionista" significa **accionista inscrito en el registro de acciones de la corporación** autorizada a emitir acciones, o una persona que es el beneficiario de un fideicomiso de votos en el cual están depositadas dichas acciones o miembros de corporaciones sin acciones de capital.
>
> (Énfasis nuestro).

Ahora bien, el Art. 7.10 establece que **"[c]ualquier accionista, por sí o por apoderado u otro agente"** tendrá derecho a solicitar, mediante requerimiento jurado, examinar, para cualquier propósito válido, el registro de las acciones y los libros corporativos.[6] (Énfasis nuestro). Propósito válido "significará un propósito que se relacione razonablemente con el interés de la persona como accionista".[7]

Asimismo, el artículo contempla que, en caso de que el accionista que solicita el examen sea distinto al accionista inscrito, "el requerimiento jurado deberá declarar su condición de accionista, **acompañarse de evidencia documental de su derecho de propiedad sobre la acción**, y declarar que la evidencia documental es copia veraz y correcta de lo que se aparenta probar".[8] (Énfasis nuestro). En cambio, en caso de que un apoderado u otro agente solicite el derecho de examen, "el requerimiento bajo juramento deberá **acompañarse con un poder u otro escrito que autorice al apoderado u otro agente a actuar de ese modo a nombre del accionista**".[9] (Énfasis nuestro). Nuestro más alto foro ha aclarado que, se podrá utilizar prueba extrínseca para probar la titularidad de una acción.[10]

Si la corporación se negara a permitir la inspección solicitada, el accionista, su apoderado u otro agente, podrá acudir ante el TPI

---

[6] *Íd.*
[7] *Íd.*
[8] *Íd.*
[9] *Íd.*
[10] *Domenech v. Integration Corp. et al.*, 187 DPR 595, 617 (2013).

para solicitar que se emita una orden que obligue a la corporación a permitir dicha inspección.[11] De esta manera, "se le otorga jurisdicción exclusiva al Tribunal de Primera Instancia para determinar si la persona que solicita el examen tiene derecho o no al examen que se solicita".[12]

Nuestro Tribunal Supremo ha expresado que, los accionistas, como dueños de la corporación, tienen un derecho a inspeccionar los libros y cuentas de la corporación para proteger sus intereses e investigar cómo se está manejando la corporación.[13] Sin embargo, el derecho de los accionistas a inspeccionar los libros y cuentas de la corporación no es absoluto.[14] La corporación se puede oponer al requerimiento de inspección del accionista, demostrando "que el propósito alegado es un pretexto y que el verdadero propósito no es válido según la Ley de Corporaciones".[15]

**-B-**

El Código Civil de Puerto Rico regula la administración de la herencia yacente, definida como el estado transitorio de la herencia desde la muerte del causante hasta su aceptación.[16] A su vez, el Art. 1563 del Código Civil establece que la administración de la herencia yacente le corresponderá a "la persona designada por el causante o, en su defecto, al **albacea**".[17] (Énfasis nuestro). Asimismo, el Art. 1564 del mismo Código[18] le imparte al administrador los siguientes deberes:

> El administrador de la herencia yacente debe conservar el caudal hasta que ocurra la aceptación o la repudiación.
> **El administrador nombrado por el testador tiene las facultades que este le asigne. Si no se le asignan facultades o si no hay testamento, estas serán las que corresponden al administrador judicial según la ley.**

---

[11] 14 LPRA sec. 3501 (b).
[12] *Íd.*
[13] *Herger et al. v. Calidad Vida Vecinal*, 190 DPR 1007, 1014 (2014).
[14] *Íd*, pág. 1017; *Domenech v. Integration Corp. et al.*, *supra*, pág. 617.
[15] *Herger et al. v. Calidad Vida Vecinal*, *supra*, pág. 1018.
[16] Artículo 1562, 31 LPRA sec. 10991.
[17] 31 LPRA sec. 10992.
[18] 31 LPRA sec. 10993.

El administrador está autorizado a realizar las reparaciones necesarias en los bienes, pero las útiles solo puede realizarlas con autorización judicial. Las reparaciones son con cargo al caudal.

(Énfasis nuestro).

Por otra parte, el Art. 1739 del Código Civil define al albacea como "la persona designada expresamente por el testador para ejecutar o vigilar la ejecución de su última voluntad".[19] A su vez, el Art. 1740 del mismo Código establece las facultades del albacea testamentario. En específico, dispone:

En ausencia de expresión del testador, el albacea tiene en el cumplimiento de su encomienda las facultades siguientes:
**(a) tomar las precauciones necesarias para la conservación y la custodia de los bienes;**
**(b) ejecutar todo lo ordenado en el testamento** y, siendo legal, sostener su validez;
(c) intervenir en los litigios o incidentes que se susciten sobre los bienes hereditarios;
(d) pagar los legados, con el consentimiento de los herederos; y
(e) realizar la partición de la herencia cuando no hay contador partidor.[20]

(Énfasis suplido).

Ahora bien, sobre las acciones que forman parte de la herencia yacente, el Tribunal Supremo ha expresado lo siguiente:

En cuanto a las acciones, el **administrador** pasará a hacer el mejor uso de ellas y de las facultades a ellas inherentes, y **en el descargo de sus funciones, tendrá a su disposición los mecanismos que la Ley de Corporaciones ofrece a todo accionista para defender sus intereses** cuando estima que la corporación está siendo mal administrada.[21]

(Énfasis nuestro).

Por último, el tratadista Fletcher dispone lo siguiente:

**Personal representatives of deceased shareholders are usually entitled to inspect the books of a corporation on the theory that they succeed to the right of the decedent**, although the right has been denied under certain circumstances.[22]

(Énfasis nuestro).

---

[19] 31 LPRA sec. 11511.
[20] 31 LPRA sec. 11512.
[21] *Ab Intestato Balzac Vélez*, 109 DPR 670, 681 (1980).
[22] 5 Fletcher Cyc. Corp. sec. 2232.

En otras palabras, como norma general, los representantes personales de los difuntos accionistas poseen el derecho de solicitar la inspección de los libros corporativos.[23]

-III-

En síntesis, los apelantes aducen que el foro primario erró al desestimar las causas de acción y concluir que ninguna de las partes tenía derecho a examinar los libros corporativos de las empresas en controversia.

Ambas partes sostienen que, en calidad de albaceas, están facultados a actuar en representación de los difuntos accionistas y a solicitar los mecanismos que provee la Ley General de Corporaciones, *supra*. Además, la señora Debbie Alonso plantea que, a pesar de que Doña Iris no figura como accionista en los certificados de acción, las acciones fueron adquiridas bajo la SLG. Por tanto, arguye que las acciones de las aludidas empresas son de carácter ganancial y le pertenecen al matrimonio Alonso-Rodríguez, en partes iguales.

Ambos errores serán discutidos de manera conjunta, por entender que están intrínsicamente relacionados. En primer lugar, discutiremos el derecho de los albaceas bajo el Art. 7.10 de la Ley General de Corporaciones, *supra*.

Según surge de la *Sentencia*, evaluada la prueba documental, el TPI determinó que, Don Santos y Doña Iris eran propietarios de las acciones de MRC. A su vez, expresó que Don Santos era el propietario de las acciones de SMS, MTD, Mariola y S.A. Properties. Así las cosas, señaló que, los apelantes no probaron tener un derecho propietario personal sobre las acciones de las empresas. Por tanto, concluyó que los apelantes no eran accionistas en las referidas empresas y, por ende, no eran acreedores del remedio interdictal conferido por el Art. 7.10, *supra*.

---

[23] *Íd.*

Reseñamos que, el Art. 7.10, *supra*, establece que "[c]ualquier accionista, por sí o **por apoderado u otro agente**" tendrá derecho a examinar, para cualquier propósito válido, el registro de accionistas y los libros corporativos. El propio Art. 7.10, *supra*, dispone que el remedio interdictal conferido no se encuentra estrictamente reservado para los accionistas. En cambio, el estatuto le extiende el referido derecho a los apoderados u otros agentes del accionista.

El Art. 22 del Código Civil, 31 LPRA sec. 5344, establece que las palabras de una ley se entenderán por su significado usual y corriente, en caso de que la ley no provea su significado. Según la Real Academia Española, apoderado significa: "[d]icho de una persona: que tiene poderes de otra **para representarla y proceder en su nombre**".[24] (Énfasis nuestro). Asimismo, define agente como: "[p]ersona que **obra con poder de otra para gestionar algo en su nombre**".[25] (Énfasis nuestro). Del propio texto del Art. 7.1, *supra*, se desprende que aquellos individuos autorizados a actuar a nombre de los accionistas y en beneficio de estos podrán solicitar el examen de los libros corporativos.

Conforme surge del expediente, Doña Iris le otorgó a su albacea la siguiente facultad:

> ---(C) Administrar su participación en las corporaciones Supermercados Mr. Special, Inc., S.A. Properties, Inc., Mariola, Inc., Mayagüez Resort & Casino, Inc., así como en cualquier otra corporación en que LA TESTADORA sea hoy o pudiera ser en el futuro accionista mayoritaria; administrar la participación de LA TESTADORA en la sociedad especial Mayagüez Tourist Development, S.E., y **como albacea administrar cualesquiera otras acciones y/o participaciones de LA TESTADORA en corporaciones, sociedad o en cualquier otro negocio en que LA TESTADORA tenga o pudiera tener participación al momento de su fallecimiento.**[26]

(Énfasis nuestro).

---

[24] Real Academia de la Lengua Española, *Diccionario de la Lengua Española*, 23.ª ed. [versión 23.7 en línea]. <https://dle.rae.es> [14 de mayo de 2024].
[25] *Íd.*
[26] Véase Apéndice de la parte apelante en el caso KLAN202400200 a la pág. 69 (*Testamento Abierto* de Doña Iris María Rodríguez Rosa).

Por su parte, Don Santos le delegó a su albacea el siguiente deber:

> ---(I) **Administrar cualesquiera acciones y participaciones del TESTADOR en corporaciones, sociedad, compañías de responsabilidad limitada u otras o en cualquier otro negocio** en que el TESTADOR estuviera envuelto o tuviese una participación o interés al momento de su fallecimiento.[27]

(Énfasis nuestro).

Ciertamente, la voluntad expresa de los causantes fue nombrar a sus albaceas como las personas designadas a representarlas y proceder en nombre de ellos en el manejo de aquellas acciones que poseyeron en vida en las distintas empresas.

Aún más, el Tribunal Supremo les ha concedido a los administradores, en el descargo de sus funciones, las facultades provistas en la Ley General de Corporaciones, *supra*, cuando estimen que la corporación está siendo mal administrada.[28] A su vez, en la esfera federal se ha reconocido, en determinadas circunstancias, el derecho de los albaceas, de accionistas que hayan muerto, a inspeccionar los libros corporativos.[29] Particularmente, en el caso de *Regal Nissan, Inc. v. Scott,* 348 Ga. App. 91 (2018), la Corte Suprema del estado de Georgia resolvió que, la administradora y representante personal de una Sucesión tenía derecho a solicitar la inspección de los libros corporativos, a pesar de que la Sucesión en sí no constaba inscrita en el registro de accionistas de la corporación. Por otro lado, en el caso de *Application of Pearson,* 223 N.Y.S.2d 15 (1961), la Corte Suprema de Nueva York sostuvo que, constituía un propósito válido el que un administrador de una Sucesión solicitara la inspección de los libros corporativos, a los fines de determinar el valor en el mercado de las acciones.

---

[27] Véase Apéndice de la parte apelante en el caso KLAN202400200 a las págs. 638-639 (*Testamento Abierto* de Don Santos Alonso Maldonado).
[28] *Ab Intestato Balza Vélez, supra.*
[29] Véase, *Regal Nissan, Inc. v. Scott,* 348 Ga. App. 91 (2018); *Application of Pearson,* 223 N.Y.S.2d 15 (1961); *Bishop's Estate v. Antilles Enterprises,* 3 V.I. 636 (1958); *Application of Schnepf,* 84 N.Y.S.2d 416 (1948).

Resulta forzoso concluir que la Ley General de Corporaciones y la jurisprudencia interpretativa, tanto local como federal, le confieren a los albaceas y administradores los mismos mecanismos que el accionista tuvo en vida para proteger sus intereses.

Ahora bien, el Art. 7.10 de la Ley General de Coporaciones, *supra*, establece ciertos requisitos para solicitar la inspección de los libros, a saber: (1) realizar la solicitud mediante requerimiento jurado; (2) consignar un propósito válido para la inspección; (3) evidenciar mediante prueba documental que, quien realiza la solicitud o la persona a quien representa, posee un derecho de propiedad sobre la acción, y; (4) declarar que la prueba documental es copia veraz y correcta de lo que se aparenta probar. Nos corresponde determinar si los apelantes cumplieron con los requisitos allí contemplados.

Conforme surge del expediente, el señor Edwin Alonso acompañó su demanda sobre *Injunction Estatutaria* de la siguiente prueba documental: (1) *Testamento Abierto* de Don Santos; (2) *Cartas Testamentarias* acreditativas de su autoridad como albacea y fiel ejecutor de las disposiciones testamentarias de Don Santos, y; (3) misiva enviada el 19 de septiembre de 2023 solicitando la inspección de los libros de MRC. Posteriormente, el señor Edwin Alonso presentó la *Petición Jurada de Información a: Mayagüez Resort & Casino, Inc.*, fechada el 19 de septiembre de 2023. A su vez, presentó el certificado de acción expedido el 29 de diciembre de 1998 por MRC a nombre de Santos Alonso Maldonado por la cantidad de 500 acciones.

Evaluada la prueba documental sometida por el señor Edwin Alonso, constatamos que el apelante cumplió cabalmente con los requisitos dispuestos por el Art. 7.10, *supra*. El señor Edwin Alonso evidenció la titularidad de Don Santos sobre las acciones de MRC, mediante certificado de acción. Además, realizó la solicitud a través

de un requerimiento jurado, en el cual consignó un propósito válido para la inspección de los libros. Por todo lo cual, concluimos que incidió el TPI al desestimar la demanda sobre *Injunction Estatutario* instada por el señor Santos Alonso, toda vez que, cumplido con los requisitos del Art. 7.10, *supra*, y como albacea de la Sucn. Alonso Maldonado, posee legitimación activa para solicitar el remedio interdictal conferido por la Ley General de Corporaciones, *supra*.

En cambio, la señora Debbie Alonso, en lo aquí pertinente, acompañó su demanda de la siguiente evidencia documental: (1) *Testamento Abierto* de Doña Iris; (2) *Cartas Testamentarias* acreditativas de su carácter de albacea de la Sucn. Rodríguez Rosa; (3) requerimiento jurado, con fecha de 19 de mayo de 2019, solicitando la inspección de los libros de SMS, S.A. Properties, Mariola, MTD, S.A. Investment. Sin embargo, la señora Debbie Alonso no presentó prueba alguna que evidenciara la titularidad de su fenecida madre sobre las acciones de las aludidas empresas, incumpliendo así con los requisitos del Art. 7.10, *supra*. La apelante no podía descansar en meras alegaciones de titularidad al solicitar el examen de los libros corporativos. Como resultado, la señora Debbie Alonso carecía de legitimación activa para solicitar el interdicto procesal provisto por la Ley General de Corporaciones. No erró el foro apelado al desestimar la demanda instada por la señora Debbie Alonso.

Finalmente, respecto al planteamiento sobre el carácter ganancial de las acciones, concordamos con el foro apelado, a los efectos de advertir que la controversia debe ser dilucidada en un pleito de índole sucesoral. La señora Debbie Alonso argumenta que, se presume la gananciabilidad de las acciones de las empresas, toda vez que sus padres estaban casados bajo la SLG. Así, pues, sostiene que Doña Iris era dueña de la mitad de las acciones pertenecientes a Don Santos. Resulta menester destacar que, el procedimiento de

*injunction* estatutario, instado bajo el Art. 7.10, *supra,* no es el mecanismo adecuado para dirimir este tipo de controversias. No le compete al foro primario adjudicar la gananciabilidad de los bienes en un pleito sobre remedio interdictal instado al amparo de la Ley General de Corporaciones.

**-IV-**

Por los fundamentos antes expuestos, se *Modifica* la *Sentencia* apelada para *Revocar* la desestimación de la demanda instada por el señor Edwin Alonso Rodríguez, y *Confirmar* la desestimación de la demanda presentada por la señora Debbie Alonso Rodríguez.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

El Juez Figueroa Cabán disiente por escrito.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

| | | |
|---|---|---|
| DEBBIE ALONSO RODRÍGUEZ, en su capacidad de Albacea de la Sucn. Iris Rodríguez Rosa<br><br>Apelante<br><br>v.<br><br>SUPERMERCADO MR. SPECIAL, INC.; S.A. PROPERTIES INC.; MARIOLA, INC.; S.A. INVESTMENTS, L. L. C.; MAYAGÜEZ TOURIST DEVELOPMENT S.E. Y EDWIN ALONSO RODRÍGUEZ<br><br>Apelados | KLAN202400200<br><br><br><br>consolidado con | Recurso de *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Mayagüez<br><br>Caso Núm. MZ2023CV01775<br><br>Sobre:<br><br>Injunction Estatutario bajo el Artículo 7.10 de la Ley General de Corporaciones de Puerto Rico |
| EDWIN ALONSO RODRÍGUEZ, en su capacidad de Albacea de la Sucn. Santos Alonso Maldonado<br><br>Apelante<br><br>v.<br><br>MAYAGÜEZ RESORT & CASINO INC.<br><br>Apelado | KLAN202400201 | Recurso de *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Mayagüez<br><br>Caso Núm. MZ2023CV01723<br><br>Sobre:<br><br>Injunction Estatutario bajo el Artículo 7.10 de la Ley General de Corporaciones de Puerto Rico |

Panel integrado por su presidente, el juez Figueroa Cabán, el juez Bonilla Ortiz, la jueza Mateu Meléndez y la jueza Prats Palerm

**VOTO DISIDENTE DEL JUEZ FIGUEROA CABÁN**

En San Juan, Puerto Rico a ___ de junio de 2024.

Para comenzar, no hay controversia de hechos, por lo cual, acogemos la relación del tracto procesal expuesta tanto por el Tribunal de Primera Instancia, en adelante TPI, como por la opinión mayoritaria. La discrepancia obedece a una cuestión de derecho, particularmente, a un asunto sobre hermenéutica o interpretación de la ley.

**"Nuestro sistema parte de la premisa de que el ordenamiento jurídico opera como un ente integrado y coherente… que las diferentes normas jurídicas se complementan entre sí…".**[30] En otras palabras, que al interpretar una norma jurídica **"no debemos limitarnos a interpretar o construir una disposición de manera aislada únicamente, sino que es preciso que nos cercioremos de que dicha interpretación o construcción tome en consideración el resto de la estructura jurídica correspondiente".**[31] Esta regla denominada interpretación holística ha sido formulada por el Tribunal Supremo de Puerto Rico, en adelante TSPR, en los siguientes términos: "[E]l canon de interpretación hermenéutica sobre lectura armoniosa… exige que al interpretar una ley, los tribunales deben armonizar, hasta donde sea posible, todas sus disposiciones con el propósito de obtener una interpretación, lógica y razonable de la intención legislativa".[32]

Contrario a dicha norma, firmemente establecida, el TPI, explícitamente, y la opinión mayoritaria, implícitamente, adoptan la posición contraria, que no forma parte de nuestro ordenamiento jurídico:

---

[30] J.M. Farinacci Fernós, *Hermenéutica Puertorriqueña*, San Juan, Ed. InterJuris, San Juan, 2019, pág. 41. (Énfasis suplido).
[31] Farinacci Fernós, *op. cit.*, pág. 43. (Énfasis suplido).
[32] *Bco. Santander v. Correa García*, 196 DPR 452, 466 (2016).

Por las partes haber recurrido a un mecanismo procesal de índole corporativo, el manejo y disposición de la acción presentada ha de atenderse de conformidad a lo dispuesto en la legislación corporativa que, en efecto, es la normativa positiva especial que regula las relaciones internas de las personas que sirven en calidad de directores, oficiales y accionistas de una corporación. Los derechos y deberes que puedan corresponder a los herederos, a los albaceas y administradores de los caudales hereditarios, procede dilucidarlos en los correspondientes pleitos de índole sucesorio en los que están involucradas las partes, ante otras salas del Tribunal de Primera Instancia.[33]

Conforme a la norma hermenéutica de interpretación armoniosa y holística, el Artículo 7.10 de la *Ley General de Corporaciones*[34] no debe de interpretarse de forma aislada con el resto del ordenamiento jurídico, especialmente con las normas de derecho sucesorio sobre albaceazgo. Así pues, la Sección 220 de la *Ley de Corporaciones*, 8 DEL sec. 2020, de donde proviene la disposición local objeto de análisis, ha reconocido al "executor", figura semejante a nuestro albacea, el derecho a inspeccionar los libros de una corporación.[35] Esta interpretación, sumamente persuasiva para nuestro ordenamiento corporativo, contraviene la interpretación rígida y a contra corriente con la norma vigente en nuestro ordenamiento jurídico, adoptada por el foro sentenciador y la opinión mayoritaria.

Por otro lado, la construcción estricta aquí adoptada, conflige con las amplias facultades que nuestro más alto foro ha reconocido a los albaceas. Hace 44 años, el TSPR puso a disposición del albacea los mismos mecanismos que la *Ley General de Corporaciones,*

---

[33] Apéndice del apelante, pág. 282.
[34] Art. 7.10 de la Ley Núm. 164-2009 (14 LPRA sec. 3650).
[35] *Devon v. Pantry Pride, Inc.* 1984 Del. Ch. LEXIS 565; *Estate of Howard M. Polin v. Diamond State Poultry Co.*, 1981 Del. Ch. LEXIS 625.

*supra,* ofrece a todo accionista para el efectivo descargo de sus funciones.[36]

Pero hay más. Una interpretación armoniosa -"de manera que sus disposiciones logren ser compatibles y no contradictorias"-[37] de las normas de albaceazgo y del concepto de agente del Artículo 7.10(B), de la *Ley General de Corporaciones, supra,* sugiere, razonablemente, que el albacea, en cuanto agente del caudal relicto, debe tener acceso a los libros corporativos.[38] Solo de esa forma, podrá realizar las funciones que le encomendó el testador.

Debemos enfatizar, que la solicitud del apelante, en el contexto de la ejecución de la voluntad testamentaria, no vulnera los intereses jurídicos protegidos por el Artículo 7.10 de la *Ley General de Corporaciones, supra*, a saber: proteger los intereses propietarios del accionista,[39] permitirle al accionista fiscalizar el manejo de la corporación[40] y reivindicar el debido proceso de ley del ente corporativo[41]. Por el contrario, permite proteger la voluntad del testador y los intereses del caudal relicto, una vez fallece el accionista.

---

[36] **"En cuanto a las acciones, el administrador pasará a hacer el mejor uso de ellas y de las facultades a ellas inherentes, y en el descargo de sus funciones, tendrá a su disposición los mecanismos que la Ley de Corporaciones ofrece a todo accionista para defender sus intereses cuando estima que la corporación está siendo mal administrada"**. (Énfasis suplido). *AB Intestato Balzac Vélez*, 109 DPR 670, 681 (1980).
[37] *Bco. Santander v. Correa García, supra*, págs. 465-466.
[38] "Se dice que un agente es aquel que "se compromete a llevar a cabo algún negocio o administrar algún asunto por cuenta de esa otra persona y a rendir cuentas del mismo". *Schwartz v. Tribunal*, 73 DPR 856, 875 (1952) (citando a *De la Rosa v. Puerto Rico Motors*, 58 DPR 341, 345 (1941)).
[39] *Santiago v. Rodríguez*, 181 DPR 204, 215-216 (2011).
[40] *Herger Pacheco v. Calidad Vida Vecinal*, 190 DPR 1007, 1014 (2014).
[41] C.E. Díaz Olivo, *Corporaciones: Tratado sobre Derecho Corporativo*, 2ª ed. rev., San Juan, Ed. Alma Forte, 2018, págs. 294-295.

A nuestro entender, el resultado alcanzado es doblemente antijurídico, a saber: (1) violenta la voluntad del testador que le concedió al albacea la facultad de administrar las corporaciones y cualesquiera acciones y participaciones del testador en corporaciones de su propiedad[42] y como señala el apelante, (2) **"[d]e sostenerse la Sentencia aquí Apelada, ello significaría que, luego de que fallece el accionista, nadie puede ejercer el derecho que otorga el Artículo 7.10 de la Ley de Corporaciones para examinar los libros de una corporación".**[43]

Este escenario insólito, no solamente transgrede la regla de interpretación holística y armoniosa, sino que además infringe una norma clásica de hermenéutica, a saber: **"el intérprete debe presumir que la norma ante su consideración no debe aplicarse de forma que lleve a resultados absurdos".**[44]

En fin, no estamos interpretando los elementos de un delito.[45] A nuestro entender, el tráfico jurídico y sobre todo la voluntad del testador, exige una interpretación integrada, razonable y flexible de los ordenamientos corporativos y sucesorios.

Hon. Félix R. Figueroa Cabán
Juez del Tribunal de Apelaciones

---

[42] Al interpretar el testamento y la voluntad del causante "siempre debe prevalecer la voluntad real del testador dentro del marco permitido por la ley". *Tous Rodríguez v. Sucn. Tous Oliver*, 212 DPR 686, 701 y 707 (2023). Véase, además, Apéndice del apelante, págs. 15-16: **(H) Administrar las corporaciones *Supermercados Mr. Special, Inc. SA Properties Inc. y Mariola Inc.* la Sociedad Especial *Mayagüez Tourist Development S.E.* y la compañía de responsabilidad limitada *SA Investments LLC*… (1) Administrar cualesquiera acciones y participaciones del TESTADOR en corporaciones…".** (Énfasis suplido).

[43] Alegato del apelante, pág. 12. (Énfasis suplido).

[44] Farinacci Fernós, *op. cit.*, pág. 31. Véase, además, *Atiles, Admor v. Comisión Industrial*, 77 DPR 16 (1954); *Celis Alquier v. Méndez*, 18 DPR 88 (1912).

[45] Art. 2 de la Ley Núm. 146-2012 (33 LPRA sec. 5002).